**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Stan Musial TRUJILLO,
Defendant–Appellant.**

**No. 89–2190.**

United States Court of Appeals,
Tenth Circuit.

June 28, 1990.

**1458**

Tara C. Neda, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., Albuquerque, N.M., with her on the brief), for plaintiff-appellee.

Ann Steinmetz, Asst. Federal Defender, Albuquerque, N.M., for defendant-appellant.

Before SEYMOUR, BARRETT and BRORBY, Circuit Judges.

BARRETT, Senior Circuit Judge.

Stan Musial Trujillo (Trujillo) appeals from the judgment and sentence entered by the district court following his guilty plea to violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2 (possession with intent to distribute more than 500 grams of cocaine and aiding and abetting). The charge underlying Trujillo's guilty plea was based on his presence in a 1989 "Jetta" Volkswagon in January, 1989, which contained more than 500 grams of cocaine, while traveling in Quay County, New Mexi-

co. Trujillo's co-defendant, David Bacoccini (Bacoccini), was the driver of the vehicle.

Trujillo and Bacoccini were stopped when New Mexico State Police Sergeant Taylor (Taylor) observed that Trujillo was not wearing a seatbelt, as required by law. Subsequent investigation revealed that the Volkswagon was registered to a Marilyn Grover, which led Taylor to ask for permission to open the trunk. According to offense reports, Trujillo consented. Bacoccini exited the vehicle and opened the trunk for Taylor. Located in the trunk were a black garment bag and a brown handbag. Both men consented to Taylor's request to look inside the bags. Taylor found approximately 16.7 pounds of cocaine in the bags, or a total of 6,909 grams. Bacoccini denied ownership of either bag. Trujillo admitted ownership of the black garment bag, containing 1,970.8 grams of cocaine, but denied any knowledge of the brown handbag.

On February 17, 1989, a grand jury returned an Indictment against Trujillo and Bacoccini, accusing them of knowingly and intentionally possessing more than five kilograms of cocaine with the intent to distribute. On April 28, 1989, Trujillo entered a guilty plea to an Information pursuant to a plea agreement memorialized in a document entitled "Memorandum of Understanding Regarding Guilty Plea." The indictment was dismissed pursuant to the agreement.

Following Trujillo's guilty plea, a Presentence Report (PSR) was prepared by Anthony Baca (Baca) of the United States Probation Office. In the PSR, Baca refused to recommend that Trujillo receive credit for "Acceptance of Responsibility," as provided for in the United States Sentencing Commission *Guidelines Manual*, (U.S.S.G.) § 3E1.1. In justification for this refusal, the PSR stated the following:

> Defendant upon the advice of his attorney, declined to make a statement. The defendant's attorney directed the U.S. Probation Officer to review defendant's statement at the time of his arrest, and his cooperation with law enforcement officers. The investigative reports reflect that defendant answered all of the police

officer's questions when asked about the contents in the trunk of the vehicle, he advised that there was clothing. Mr. Trujillo gave the officer permission to search the trunk. Both Trujillo and Baccocini [sic] denied any knowledge or the ownership of the brown overnight bag which contained the majority of the cocaine. Trujillo claimed ownership of the black garment bag. 3E1.1(a) indicates that if a defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, the offense level is to be reduced by two levels. *There has been no demonstration of a recognition or affirmative acceptance of personal responsibility by the defendant for his criminal conduct, consequently, he does not qualify for the two level offense reduction.* (Emphasis added).

(PSR, pp. 3–4).

Trujillo challenged this conclusion in his "Sentencing Statement," filed July 10, 1989, and at his sentencing hearing. He contended that he was being improperly subjected to greater punishment solely because he had declined to make a statement during the presentence interview.

Trujillo and Bacoccini were sentenced on July 21, 1989. Bacoccini was sentenced to a term of seventy (70) months in prison and Trujillo was sentenced to a term of one-hundred-and-twenty-one (121) months in prison. Both were sentenced under the Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551, *et seq.*

Trujillo does not contest his conviction. The issues in this appeal arise solely from the district court's sentencing decisions.

### I.

Trujillo first contends that it was error for the district court to deny him a two-level reduction in his sentence for "acceptance of responsibility," as provided for in U.S.S.G. § 3E1.1. Trujillo maintains that his sentence was imposed in violation of the law because his assertion of his Fifth Amendment right against self-incrimination during his presentence interview was unfairly used against him in denial of a two-level reduction for "acceptance of responsibility" in determining the offense level.

U.S.S.G. § 3E1.1 provides:

*Acceptance of Responsibility*

(a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.

(b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial.

(c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

The Application Notes to U.S.S.G. § 3E1.1 suggest a number of factors to be considered in determining whether a defendant qualifies for his downward adjustment, to-wit:

1. In determining whether a defendant qualifies for this provision, appropriate considerations include, but are not limited to, the following:

(a) voluntary termination or withdrawal from criminal conduct or associations;

(b) voluntary payment of restitution prior to adjudication of guilt;

(c) voluntary and truthful admission to authorities of involvement in the offense and related conduct;

(d) voluntary surrender to authorities promptly after commission of the offense;

(e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

(f) voluntary resignation from the office or position held during the commission of the offense; and

(g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

\* \* \* \* \* \*

3. A guilty plea may provide some evidence of the defendant's acceptance of

responsibility. However, it does not, by itself, entitle a defendant to a reduced sentence under this section.

U.S.S.G. § 3E1.1, comment. (n. 1 and 3).

Our standard of review is delineated under U.S.S.G. § 3E1.1, comment. (n. 5):

[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation.

■■■ In *United States v. Rogers*, 899 F.2d 917, 924 (10th Cir.1990), this court held that:

[t]he burden of proof for establishing entitlement to a reduction of the offense level for acceptance of responsibility is on the defendant, who must establish the mitigating factor by a preponderance of the evidence. *See United States v. Urrego–Linares*, 879 F.2d 1234, 1238–39 (4th Cir.), *cert. denied* [—— U.S. ——], 110 S.Ct. 346 [107 L.Ed.2d 334] (1989).

\*    \*    \*    \*    \*    \*

Furthermore, the denial of a downward adjustment under § 3E1.1 does not constitute a penalty or an enhancement of sentence. There is a difference between increasing the severity of a sentence for failure to demonstrate remorse and refusing to grant a reduction from the prescribed base offense level.

Therefore, "[b]ecause the trial court's assessment of a defendant's contrition will depend heavily on credibility assessments, the 'clearly erroneous' standard will nearly always sustain the judgment of the district court in this area." *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989). Furthermore, this court has held that "the quantum of proof required for factual determinations under the Sentencing Guidelines is a preponderance of the evidence and the burden of proof generally is allocated to the government for sentence increases and to the defendant for sentence decreases." *United States v. Rutter*, 897 F.2d 1558, 1560 (10th Cir.1990).

Notwithstanding the foregoing, Trujillo maintains that the question presented here raises an issue concerning the sentencing court's misapplication of the guidelines based upon impermissibly penalizing his right to remain silent. Trujillo contends that this is not purely a factual question, but rather, one involving a question of law subject to *de novo* review.

■■■ Under U.S.S.G. § 3E1.1(a), a defendant is entitled to a reduction of his base offense level by two levels when the defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Trujillo argues that the following factors, as enumerated under the Application Notes to § 3E1.1, apply to his conduct and indicate that he accepted responsibility for his criminal actions: (a) voluntary termination or withdrawal from criminal conduct or associations (Trujillo was cooperative with the police); (c) voluntary and truthful admission to authorities of involvement in the offense and related conduct (he willingly answered all questions, gave permission to search, and voluntarily admitted ownership of the black garment bag containing cocaine at the time of the search); (d) voluntary surrender to authorities after commission of the offense (he cooperated at arrest, making no attempt to flea or to resist and he entered a guilty plea to possession of cocaine with intent to distribute); and (g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility (he accepted responsibility from the very beginning when Sergeant Taylor searched the vehicle).

Upon advice of counsel, Trujillo declined to discuss the circumstances surrounding his offense with Probation Officer Baca, who prepared the PSR. Instead, Trujillo asked that Baca refer to his statements and conduct at the time of arrest to determine his acceptance of responsibility. Trujillo asserts that he was not given credit for acceptance of responsibility because he invoked his Fifth Amendment privilege against self-incrimination at the time of the presentence interview. Trujillo relies on *United States v. Perez–Franco*, 873 F.2d

455 (1st Cir.1989). In that case, Perez–Franco was indicted on five charges involving possession of heroin. He pled guilty to one count, and the government agreed to dismiss the other counts and recommend a sentence of ten years imprisonment. The sentencing court, at the recommendation of the probation officer who prepared the presentence report, refused to give Perez–Franco credit for acceptance of responsibility because, during the presentence interview, he refused to make admissions concerning all of his criminal conduct. On appeal, the court reversed and held that "acceptance of personal responsibility for his criminal conduct" within the meaning of § 3E1.1 means conduct to which the defendant pled guilty; "criminal conduct" does not mean all criminal conduct, including counts to which the defendant did not plead guilty. *Id.* at 459. Thus, § 3E1.1 does not require a defendant to accept responsibility for charges that are dismissed as part of a plea agreement. *Id.*

Trujillo's reliance on *Perez–Franco,* is misplaced. That case is factually distinguishable from the instant case. In that case, Perez–Franco did not wish to provide information on criminal conduct other than the offense to which he pled guilty for fear of incriminating himself on the counts to which he maintained a not guilty plea. The court held that "a defendant cannot have a reduction in sentence predicated upon his making self-incriminating statements relating to counts which he has *not* pled guilty and which are to be dismissed as part of a plea agreement." *Id.* at 464 (Emphasis added). In the case at bar, Trujillo refused, on the advice of counsel, to provide Probation Officer Baca any information regarding his conduct *relative to the offense to which he pled guilty.* Thus, Trujillo was not refusing to incriminate himself on counts to which he had pled not guilty; he was refusing to provide information on the count to which he had admitted his guilt. No Fifth Amendment privilege exists in the latter case.

■ Trujillo rests his argument on the faulty characterization that denial of a sentence reduction for acceptance of responsi-

bility is a penalty. However, this court held in *United States v. Rogers,* 899 F.2d at 924 that U.S.S.G. § 3E1.1 neither compels a defendant to incriminate himself nor, if he chooses silence, would the denial of a reduction under that section constitute a penalty in violation of a defendant's Fifth Amendment rights. "[T]he denial of a downward adjustment under § 3E1.1 does not constitute a penalty or an enhancement of sentence." *Id.* Furthermore, since the implementation of the Sentencing Guidelines, other courts have also held that denial of a sentence reduction under U.S.S.G. § 3E1.1 because of a defendant's refusal to admit guilt is not unconstitutional. *United States v. Henry,* 883 F.2d 1010, 1011 (11th Cir.1989) (U.S.S.G. § 3E1.1 does not violate the Fifth Amendment to the United States Constitution) and *United States v. White,* 869 F.2d 822, 826 (5th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989) ("The fact that a more lenient sentence is imposed upon a contrite defendant does not establish a corollary that those who elect to stand trial are penalized."). Consequently, Trujillo was properly denied a two-level sentence reduction for his failure to accept responsibility for the offense to which he pled guilty.

## II.

■ Trujillo argues that it was an abuse of discretion for the district court to refuse to award him credit for "acceptance of responsibility" based on its determination that such "acceptance" was not timely. On the issue of timeliness, the district court has substantial discretion. *United States v. Perez–Franco,* 873 F.2d at 464. This conclusion is supported by the Application Notes to U.S.S.G. § 3E1.1, which state: "1. In determining whether a defendant qualifies for this provision, appropriate considerations include, but are not limited to, the following: ... (g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility."

■ Trujillo asserts that he manifested acceptance of responsibility early on, before court proceedings had even begun. He cooperated with police and voluntarily

admitted to owning the black garment bag containing 1,970.8 grams of cocaine. In addition, he pled guilty to possession of cocaine with intent to distribute.

The government contends that Trujillo has misstated the sentencing court's finding that a sentence reduction was denied him merely because his acceptance was untimely. The district court noted that Trujillo had provided no information to the Probation Office upon which it could rely in assessing his acceptance of responsibility. Furthermore, the court stated that Trujillo did not admit or assume full culpability for the offense.

The PSR indicates that Trujillo informed Police Sergeant Taylor that he was only carrying clothing in the trunk. Nothing in the record reveals that Trujillo ever acknowledged culpability in the offense to which he pled guilty. Moreover, Trujillo's guilty plea, standing alone, does not entitle him to a two-level sentence reduction under U.S.S.G. § 3E1.1. "A guilty plea may provide some evidence of the defendant's acceptance of responsibility. However, it does not, by itself, entitle a defendant to a reduced sentence under this section." U.S. S.G. § 3E1.1 comment. (n. 3). As stated by the district court, "[t]he pre-sentence report affords the defendant an opportunity to state their side of the case and present the best position that may benefit them." (R., Vol. II, p. 9).

The sentencing court was in the best position to evaluate Trujillo's demeanor, and the timeliness and quality of his admissions. The court's determination that Trujillo's conduct did not warrant a sentence reduction under U.S.S.G. § 3E1.1 was not an abuse of discretion.

### III.

Trujillo contends that he is entitled to a new sentencing hearing on the issue of whether the disparate sentence imposed against him and his co-defendant, Bacoccini, abrogated his rights to due process and equal protection, and violated the statutory and congressional mandates of the Sentencing Reform Act of 1984. This argument is based on the fact that Trujillo received a sentence of 121 months in prison whereas Bacoccini was sentenced to a total of 70 months in prison.

### A

■ Trujillo's first contention under this argument is that he is entitled to a new sentencing hearing on due process grounds because the district court failed to allow him to make a record on his equal protection claim at the sentencing hearing. This contention is based on the colloquy that took place between the district court and Trujillo's attorney at the sentencing hearing on July 21, 1989. Immediately after the court stated its sentence, defense counsel attempted to raise an equal protection claim on behalf of Trujillo:

> Ms. Steinmetz: Your Honor, I would just point out that Mr. Bacoccini is the co-defendant in this case, he received a sentence of seventy months—
>
> The Court: I understand that, Ms. Steinmetz.
>
> Ms. Steinmetz: —a difference of fifty-one months—
>
> The Court: I'm not going to argue with you Mr. [sic] Steinmetz.
>
> Ms. Steinmetz: —under the guidelines which are supposed to be the same for co-defendants.
>
> The Court: Ms. Steinmetz, I'm not committed to give him the same sentence of his co-defendant, you understand?
>
> Ms. Steinmetz: I—
>
> The Court: And I've passed my sentence. I'm not going to argue with you.
>
> Ms. Steinmetz: Yes. I just wanted to point out—
>
> The Court: That'll be all, Ms. Steinmetz.
>
> Ms. Steinmetz: —that under the—

(R., Vol. II, pp. 13–14). This discussion was terminated when the prosecutor interjected and moved the court to dismiss Indictment 89–49 as to Trujillo, pursuant to the plea agreement.

Trujillo maintains that the foregoing indicates that the district court violated its duty to afford him an opportunity to be heard at the sentencing hearing on the equal protection and due process chal-

lenges to his sentence. Trujillo contends that he is entitled to a new sentencing hearing on this matter. We disagree.

Trujillo's argument that he had no opportunity to be heard ignores critical facts. Although his counsel's argument was interrupted, Trujillo's position on the disparity was understood by the court. Moreover, the facts giving rise to the disparity between Trujillo and Bacoccini could have been addressed by Trujillo's counsel. Trujillo had ample opportunity to contest the recommendations of the Probation Office; instead, he refused to make a statement to Officer Baca. Furthermore, a sentencing statement was filed and argument was heard on the matters which determined Trujillo's sentence.

### B

Trujillo also contends that he is entitled to a new sentencing hearing on due process and equal protection grounds because the district court failed to give adequate reasons for the imposition of the disparate sentences imposed against Trujillo and his co-defendant, Bacoccini. Trujillo cites to 18 U.S.C. § 3553(c) as authority for this argument.

In relevant part, 18 U.S.C. § 3553(c) states:

> **Statement of reasons for imposing a sentence.**—The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence—
>
> (1) is of the kind, and within the range, described in subsection (a)(4)[1] and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range; or

**1.** 18 U.S.C. § 3553(a)(4) provides:
**Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

* * * * * *

(4) the kinds of sentence and the sentencing range established for the applicable category of

> (2) is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described.

Trujillo also relies on *United States v. Smith*, 888 F.2d 720 (10th Cir.1989), to support his assertion that the district court erred by failing to adequately state the reasons for the disparate sentences. Trujillo has misconstrued the law on this subject.

According to 18 U.S.C. § 3553(c), the sentencing court is required to state, in open court, the reasons for its imposition of the particular sentence in *the case before it*. Nowhere in the statute is there any requirement that the court discuss related cases or sentences. At the sentencing hearing the district court stated the reasons for Trujillo's sentence, and the reasons for imposing the sentence at a particular point within the Guideline range, to wit:

> [T]he Court in arriving at a sentence within the appropriate guideline range takes judicial notice that the amount of cocaine involved in the instant case was at the lower end of the drug table establishing the offense level.
>
> In addition, the defendant has no previous pattern of criminal behavior. Therefore, a sentence at the lower end of the guideline range would be appropriate as it addresses the sentencing goals of punishment and general deterrants [sic].
>
> Therefore, pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of one hundred and twenty-one months.

(R., Vol. II, p. 12). The court was required to give no further statement.

offense committed by the applicable category of defendant as set forth in the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1) and that are in effect on the date the defendant is sentenced; . . . .

Trujillo's reliance on *United States v. Smith, supra,* is misplaced. In that case, the district court departed upward from the sentencing range provided by the Sentencing Guidelines. In support of this departure, the court took " 'judicial notice of the force and violence used by the defendant.' " *Id.* at 724. This court held that the foregoing general recitation of the reasons for departure was insufficient under 18 U.S.C. § 3553(c):

> [A]lthough we assume the court believed the defendant's acts were beyond the norm for the offense as set out in the guidelines, without the court's enumeration of the factors upon which that belief was predicated, we simply are left to speculation.
>
> Additionally, the district court failed to indicate whether it found the Sentencing Commission inadequately considered those factors in formulating the guidelines. Such a finding is a condition precedent to imposition of a sentence above the guideline range. (Citations omitted).
>
> Without particularization by the trial court of its reasons for an enhanced sentence, this court cannot engage in the kind of meaningful review intended by § 3742 of the Sentencing Reform Act, which provides that a sentence should be set aside by this court if it departs unreasonably from the Guidelines' recommended sentence. 18 U.S.C. § 3742(e).

*Id.* Thus, this court held, in accordance with § 3553(c), that the district court must articulate specific reasons for a departure upward. We did not hold that the same type of articulation is necessary if the district court does not depart from the sentencing range provided by the Sentencing Guidelines, as in this case. *See United States v. Beaulieu,* 900 F.2d 1531, 1535–36 (10th Cir.1990) and *United States v. Pettit,* 903 F.2d 1336, 1340 (10th Cir.1990).

An identical base offense level of 32 was recommended for Trujillo and for his co-defendant, Bacoccini. This recommendation was accepted by the sentencing court. However, based upon information provided by Bacoccini, his sentence was reduced for acceptance of responsibility under U.S.S.G. § 3E1.1, and for his role as a minimal participant under U.S.S.G. § 3B1.2(a)[2].

Trujillo relies on *United States v. Nowicki,* 870 F.2d 405 (7th Cir.1989) and *United States v. Monzon,* 869 F.2d 338 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989) for the proposition that a sentencing judge must give *"thoughtful consideration"* to disparate sentences imposed on co-defendants. Trujillo contends that his sentencing court failed to follow this mandate and also violated the edict to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Trujillo ignores critical facts in advancing this argument.

The base offense level for Trujillo and Bacoccini was calculated to be 32 because of the total amount of cocaine discovered in the trunk of the car. Probation Officer Baca, however, recommended a two-level reduction for Bacoccini pursuant to U.S.S.G. § 3E1.1 because of his acceptance of responsibility. Bacoccini also received a four-level reduction pursuant to U.S.S.G. § 3B1.2(a) as a minimal participant based on his lack of knowledge or understanding of the scope of the enterprise and the fact that he had been hired by Trujillo to be a relief driver. Therefore, Bacoccini's offense level was reduced to a 26, with a sentencing range of 70 to 87 months, with a criminal history category of II.

In Trujillo's PSR, Officer Baca did not recommend a two-level reduction for acceptance of responsibility. Furthermore, no reduction for Trujillo's role in the offense was recommended. Therefore, Trujillo and Bacoccini were not similarly situ-

---

**2.** U.S.S.G. § 3B1.2 provides:
Based on the defendant's role in the offense, decrease the offense level as follows:
(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
In cases falling between (a) and (b), decrease by 3 levels.

ated. Congress sought uniformity in sentencing for "*similar criminal conduct by similar offenders.*" U.S.S.G. intro. p. 1.2 (Emphasis added). Thus, the district court was not required to give Bacoccini and Trujillo the same sentences.

Trujillo's sentence did not exceed that mandated by statute and the Sentencing Guidelines. This disparate sentence challenge is based solely on the lesser sentence imposed on his co-defendant, Bacoccini. We adopt the Fifth Circuit's reasoning in a case involving co-defendants similarly charged but whose criminal records were strikingly different:

> [A] mere disparity of sentences among codefendants does not, alone, constitute abuse of discretion, *United States v. Atkins,* 618 F.2d 366, 373–74 (5th Cir.1980), and a sentencing court is not required to enunciate the reasons underlying its decision. *United States v. Garcia,* 617 F.2d 1176, 1178 (5th Cir.1980). A judge is to be accorded wide discretion in determining an appropriate sentence. *Id.* He is not obligated to consider codefendants' sentences when imposing sentence on a defendant. *United States v. Lauga,* 762 F.2d 1288, 1291 (5th Cir.1985). A defendant cannot rely upon his codefendants' sentences as a yard-stick for his own. *United States v. Hayes,* 589 F.2d 811, 827 (5th Cir.), *cert. denied,* 444 U.S. 847 [100 S.Ct. 93, 62 L.Ed.2d 60] (1979).

*United States v. Boyd,* 885 F.2d 246, 248–49 (5th Cir.1989) (*quoting United States v. Castillo–Roman,* 774 F.2d 1280, 1283–84 (5th Cir.1985)). Although the cases cited in *Boyd* were decided prior to the effective date of the Sentencing Reform Act, *Boyd* was decided under the Sentencing Guidelines.

### C

■ Trujillo's argues that should this court determine that remand for resentencing is not necessary under subissues (A) and (B), his sentence should be vacated because his rights to due process and equal protection were violated by the disparate sentences imposed against him and his co-defendant, Bacoccini. Trujillo claims that the only significant differences between the co-defendants appears to be Bacoccini's criminal history category indicating that he had a prior conviction, the fact that Trujillo admitted to ownership of a bag containing cocaine at the time of their arrest, while Bacoccini did not, and the fact that Trujillo invoked his Fifth Amendment privilege at the presentence interview. Further, Trujillo states that it is impermissible to impose a disproportionate sentence based on the exercise of a constitutional right.

Trujillo again fails to recognize the facts of the case. Trujillo and Bacoccini both received the same base offense level of thirty-two for possession of 6,909 grams of cocaine. However, Bacoccini received a six level reduction for acceptance of responsibility and his role as a minimal participant in the crime. Trujillo did not receive these reductions. Thus, the sentences imposed against Trujillo and Bacoccini were different, not because Trujillo exercised his Fifth Amendment right against self-incrimination, but because the sentencing court determined that Trujillo did not accept responsibility for his actions and was not entitled to a reduction for his role in the offense. The record supports the district court's action.

### IV.

■ Trujillo contends that the district court incorrectly applied the Sentencing Guidelines in determining his base offense level. Trujillo's argument is that his base offense level should have been calculated based on the 1,970.8 grams of cocaine which were actually found in his possession. He reasons that since he admitted only to possession of that quantity of cocaine, only that amount should have been used to establish his offense of conviction. Trujillo points out that, based on that quantity of cocaine, his correct base offense level was 26. This argument was rejected by the district court, and we reject it here.

We review sentences imposed under the Sentencing Guidelines according to the standard provided by the Sentencing Reform Act of 1984 and codified at 18 U.S.C.

§ 3742, which, under subsection (e), provides:

(e) **Consideration.**—Upon review of the record, the court of appeals shall determine whether the sentence—

(1) was imposed in violation of the law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines;

(3) is outside the applicable guideline range, and is unreasonable, having regard for—

(A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and

(B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c); or

(4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

Furthermore, this court must also comply with the mandates of 18 U.S.C. § 3742(f), which provides, in relevant part:

**(f) Decision and disposition**

If the court of appeals determines that the sentence—

(1) was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate;

(2) is outside the applicable guideline range and is unreasonable or was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable, it shall state specific reasons for its conclusions;

\*      \*      \*      \*      \*      \*

(3) is not described in paragraph (1) or (2), it shall affirm the sentence.

*See also United States v. Smith,* 888 F.2d at 723. While this court must give "due deference to the district court's application of the guidelines to the facts," § 3742(e), we review the application of the guidelines for errors of law. The

'circumstances of the case' govern the 'amount of deference due a sentencing judge's application of the guidelines to the facts.' *United States v. Daughtrey,* 874 F.2d 213, 217 (4th Cir.1989). [T]he clearly erroneous standard is appropriate when 'the issue turns primarily on a factual determination,' but when 'the issue ... turns primarily on the legal interpretation of a guideline term, [or on] which of several offense conduct guidelines most appropriately apply to the facts as found, ... the standard moves closer to *de novo* review.' *Id.*

*United States v. Roberts,* 898 F.2d 1465, 1469 (10th Cir.1990).

The Sentencing Guidelines contain a table in which applicable sentence ranges are established by the combination of various offense levels and criminal history categories. *United States v. Shorteeth,* 887 F.2d 253, 255 (10th Cir.1989) (*citing* U.S.S.G. Ch. 5, part A, at 5.2):

The offense level used to establish the appropriate sentence range is determined by adjusting an offense-specific base offense level ... § 1B1.1. For drug-related offenses, the primary determinant of the base offense level is the quantity of drugs involved in the offense. *Id.* § 2D1.1(a)(3). In determining the quantity of drugs for computing the base offense level, *Guidelines* §§ 1B1.3(a)(2) & 3D1.2(d) require consideration of '*all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction.*' (Emphasis added).

*Id.*

Apparently, Trujillo claims that he only pled guilty to possession of the one bag containing 1,970.8 grams. His position is that the other bag containing 4,936.5 grams of cocaine, also found in the trunk

of the Volkswagon, should not be aggregated. However, the record does not indicate that such a distinction was made in his plea. Trujillo pled guilty as an aider and abettor to one count of possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2. Nevertheless, the drug quantities in both bags would be aggregated because they comprised "such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction; ...." U.S.S.G. § 1B1.3(a)(2).

Trujillo relies on *United States v. Restrepo*, 883 F.2d 781 (9th Cir.1989), to support his argument. In that case, the court determined that the aggregation of the quantity of drugs involved in the defendant's offense of conviction together with the amount of drugs which his co-defendant possessed was improper. In reaching that decision, the court determined that the guidelines were ambiguous, and thus applied the rule of lenity to hold that calculation of the defendant's base offense level should be restricted to the quantity of drugs involved in his offense of conviction alone. However, the *Restrepo* opinion has been withdrawn upon the grant of a petition for rehearing. *See United States v. Restrepo*, 896 F.2d 1228 (9th Cir.1990).

Furthermore, we rejected the *Restrepo* result in *United States v. Rutter*, 897 F.2d at 1562, and there agreed with those circuits which have held that U.S.S.G. § 1B1.3(a)(2) requires aggregation of quantities from drug offenses encompassed by U.S.S.G. § 2D1.1 " 'that were part of the same course of conduct or common scheme or plan as the offense of conviction,' regardless of whether the defendant was convicted of the underlying offenses pertaining to the additional amounts." *Id. See also United States v. Williams*, 880 F.2d 804, 805 (4th Cir.1989) (quantities of cocaine not specified in the count to which the defendant pled guilty could be considered in computing the defendant's base offense level under the Sentencing Guidelines); *United States v. Taplette*, 872 F.2d 101, 106 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 128, 107 L.Ed.2d 88 (1989)

(the Sentencing Guidelines allow the consideration of relevant conduct for which the defendant was not convicted in determining the actual guideline range); *United States v. Ykema*, 887 F.2d 697, 700 (6th Cir.1989) (the base offense level under the Sentencing Guidelines used in sentencing Ykema for possession with intent to distribute cocaine was not required to be based on the amount of cocaine specified in the plea agreement and could be based on his conduct outside of the plea agreement); *United States v. White*, 888 F.2d 490, 497 (7th Cir.1989) ("when the Guidelines provide tables that cumulate the amount sold ..., any acts that 'were part of the same course of conduct or common scheme or plan as the offense of conviction' should be included in the computation of the amount on which the offense level depends, whether or not the defendant was convicted of selling ... these additional amounts."); *United States v. Mann*, 877 F.2d 688, 690 (8th Cir.1989) (the Sentencing Guidelines make clear that in determining the applicable range, multiple convictions are not required); and *United States v. Scroggins*, 880 F.2d 1204, 1211–14 (11th Cir.1989) (where prior thefts to which Scroggins had confessed were part of the same course of conduct as the theft to which he pled guilty, the sentencing court could properly consider evidence relating to other thefts in determining the guideline sentence).

Particularly on point is *United States v. Sailes*, 872 F.2d 735 (6th Cir.1989). In that case, the defendant pled guilty to possession with intent to distribute less than 500 grams of cocaine. However, more than 800 grams were found in her residence. The defendant argued that she was only aware of 36 grams of cocaine on her property. The court held that the entire amount of cocaine discovered must be included as relevant conduct in accordance with U.S.S.G. § 1B1.3 because the total amount of cocaine comprised a common scheme. *Id.* at 738.

The Sentencing Commission clearly intended such aggregation. U.S.S.G. § 1B1.3, comment. (n. 5) states the following:

Subsection (a)(2) provides for consideration of a broader range of conduct with

respect to one class of offenses, primarily certain property, tax, fraud and drug offenses for which the guidelines depend substantially on quantity,.... However, the applicability of subsection (a)(2) does not depend upon whether multiple counts are alleged.... [For example] in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction.

We hold that the district court did not err in aggregating the entire amount of cocaine found in the vehicle in determining Trujillo's base offense level.

## CONCLUSION

Trujillo's arguments are without merit. We affirm the sentence imposed by the district court.