937 F.2d 617
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
James SNYDER, Defendant-Appellant.
 No. 90-8042.
 United States Court of Appeals, Tenth Circuit.
 July 16, 1991.
 
 Before STEPHEN H. ANDERSON and EBEL, Circuit Judges, and SAFFELS, District Judge.*
 ORDER AND JUDGMENT**
 EBEL, Circuit Judge.
 
 
 1
 The defendant-appellant, James Barrie Snyder, was indicted for conspiring to distribute Lysergic Acid Diethylamide ("LSD") under 21 U.S.C. Sec. 841(a)(1) and for involving minors in the conspiracy under 21 U.S.C. Sec. 845b.[1] The defendant was convicted by a jury and was sentenced to serve a term of ninety-seven months. The defendant has presented a number of issues on appeal, which may generally be grouped together into the following issues: (1) whether the government's witnesses improperly commented on his right to remain silent; (2) whether the district court erred in allowing the government to introduce evidence tending to prove that the defendant had conspired to distribute marijuana even though the indictment did not charge him with conspiring to distribute marijuana; (3) whether the government improperly bolstered the testimony of one of its witnesses; (4) whether there was sufficient evidence to support his conviction; and (5) whether the district court improperly calculated his sentence under the United States Sentencing Guidelines by basing his sentence on a quantity of LSD sold by a co-conspirator. For the reasons stated below, we AFFIRM the district court.
 
 FACTS
 
 2
 In May of 1989, defendant's sister-in-law, Lynette Snyder, began to sell marijuana to school children in the Casper, Wyoming area. Lynette purchased the marijuana from the defendant who was living in Denver. In June of 1989, Lynette decided to sell LSD. She purchased the LSD from defendant's daughter, Sara Snyder. Sara was eighteen years old at that time and was living with her father. Lynette used her daughter, Brooke Snyder, and two of her friends, Dan Candeleria and Jason Bowman, to sell both the marijuana and the LSD at a school in Casper. During this time, Brooke Snyder and Dan Candeleria were seventeen years old, and Jason Bowman was eighteen years old. In addition, Mikelle Brammer, a nineteen-year-old who was living with Lynette and her daughter Brooke, was also participating in the drug distribution scheme. After local authorities received a tip that Lynette Snyder was distributing drugs in the Casper area, they began an investigation that eventually led them to the defendant.[2] The defendant was indicted on September 18, 1989. He was tried in the United States District Court for the District of Wyoming. The jury handed down its verdict of guilty on February 6, 1990 following a two-day trial.
 
 DISCUSSION
 
 3
 The defendant has raised a number of issues on appeal claiming that errors were committed during both the guilt phase and sentencing phase of his trial. Specifically he claims that: (1) two government witnesses improperly commented on his right to remain silent; (2) the district court erred in allowing the government to introduce evidence that tended to prove that the defendant was involved in the sale of marijuana--a crime he was not charged with--and that allowing such evidence chilled his ability to testify on his own behalf; (3) the government improperly bolstered the testimony of one of its witnesses by referring to a plea bargain reached between the witness and the government where the witness promised to tell the truth in exchange for leniency; (4) the district court erred in not granting defendant's request for an acquittal following the government's presentation of its case in chief on the grounds that there was insufficient evidence to convict him of conspiring to distribute the LSD, and of intending to involve minors to help distribute the narcotics; and (5) the district court improperly calculated his sentence based upon a quantity of LSD sold by Sara Snyder to Lynette Snyder, which according to the defendant, was sold prior to his involvement in the alleged conspiracy. We will address these issues seriatum.
 
 
 4
 I. Comment on the Defendant's Right to Remain Silent
 
 
 5
 The defendant claims that the two police officers called by the government as witnesses improperly testified about the defendant's desire to exercise his right to consult with his attorney before talking with them, thereby undermining his constitutional rights to remain silent and to counsel. We disagree.
 
 
 6
 The two witnesses were police officers who had interviewed the defendant in Denver prior to his arrest. At trial, the police officers presented the following testimony:
 
 
 7
 Q. (By Government's Attorney) Now, Officer Weischedel, with reference to your investigation concerning this matter, did you have occasion to meet with James Snyder?
 
 
 8
 A. Yes, I did.
 
 
 9
 Q. And where was that?
 
 
 10
 A. Where?
 
 
 11
 Q. Where?
 
 
 12
 A. It was in Denver, Colorado, at his residence.
 
 
 13
 Q. And what date?
 
 
 14
 A. I believe that was on September 12th, 1989.
 
 
 15
 Q. And for what purpose?
 
 
 16
 A. We went there with the purpose of talking to him and getting his side of the story. We had been told by other co-conspirators that he was involved also.
 
 
 17
 .............................................................
 
 
 18
 ...................
 
 
 19
 * * *
 
 
 20
 Q. Who is "we"?
 
 
 21
 A. Myself, Special Agent Mike Burnett with Division of Criminal Investigation, and an Ed Eddinger, I believe his last name is, he is with the Denver Police Department.
 
 Q. Did you meet with Mr. Snyder:
 
 22
 A. Yes, we did.
 
 
 23
 Q. And what happened then?
 
 
 24
 A. We met with Mr. Snyder, introduced ourselves, and asked him if he would be willing to accompany us to the Denver Police Department in regards to his behalf, or give his side of the story. He advised that he would accompany us but he would like to talk to his attorney first.
 
 
 25
 At which time we said that was fine to talk to his attorney, and if he still wanted to talk with us to call our motel, and we could arrange a meeting.
 
 
 26
 As we were attempting to--or about to leave, he asked, "Well, what do you want to know?" And special Agent Burnett told him that we were interested, again on his side of the story, and also working up his connect.
 
 
 27
 At that time Mr. Snyder stated that was part of the problem, that he had more than one source, or something to that effect. And then he also told us that he would go with us, and we told him not until--to call his attorney first, and then if they wanted to talk to us they could come and meet us someplace. And then we left.
 
 
 28
 Q. All right.
 
 
 29
 Tr.Vol. IV at 88-90. The second police officer, Michael Burnett, presented similar testimony at the end of the trial. Tr.Vol. IV at 281-83.
 
 
 30
 The defendant argues that the government put on this testimony hoping that the jury would believe the defendant was guilty simply because he did not want to speak with the officers until after he had consulted with his attorney. The government contends that the defendant's Fifth Amendment Rights are not implicated because at the time he allegedly spoke with the officers, he had not yet been arrested. Because we hold that the government did not comment on the defendant's invocation of his right to remain silent with the intent that the jury would think this was evidence of his guilt nor was the testimony "of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent," see United States v. Jefferson, 925 F.2d 1242, 1257 (10th Cir.1991) (quotation omitted), we need not decide whether these comments implicated the Fifth Amendment even though the defendant had not yet been formally arrested.
 
 
 31
 The government claims, and we agree, that the testimony was introduced to prove that the defendant had been dealing narcotics--not that he was exercising his right to remain silent. Specifically, the officers stated that although the defendant claimed that he wanted to speak with his attorney, he did state, in response to the officers' questions regarding his "connect," that "he had more than one source...." Likewise, to the extent the jurors afforded this testimony any weight in their deliberations, they most likely relied on what the defendant did say and not his expressed desire to remain silent. We do not believe that the jury would naturally or necessarily take this testimony as a comment on the defendant's right to remain silent.
 
 II. Evidence of the Uncharged Crime
 
 32
 The defendant alleges, and the government admits, that the government introduced a great deal of evidence tending to prove that the defendant had sold a substantial amount of marijuana to Lynette Snyder. The defendant claims that he was in effect being tried for a crime for which he had not been charged, and that this evidence prejudiced his ability to defend himself against the LSD conspiracy charge.
 
 
 33
 Under Fed.R.Evid. 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." We review the district court's decision to admit such evidence under an abuse of discretion standard. See United States v. Record, 873 F.2d 1363, 1373 (10th Cir.1989). We cannot, on this record, hold that the district court abused its discretion in admitting this evidence.
 
 
 34
 The crucial issue in this case is whether the defendant had reached some kind of agreement with his daughter Sara to deliver the LSD to Lynette. The defendant argues that while he was aware that Sara had been participating in an LSD distribution scheme with Lynette, he had never been an active participant. The government, on the other hand, contends that the LSD distribution scheme was the product of a plan or agreement reached between the defendant, Sara, and Lynette. In fact, the government argues that the marijuana sales and LSD sales were so inexorably intertwined in the overall conspiracy to sell drugs--both LSD and marijuana--that they were part of the same conspiracy to sell drugs in Casper. Evidence that the defendant had delivered a substantial amount of marijuana to Lynette tended to prove opportunity, intent, and a plan between the defendant and his daughter, Sara, to add LSD to the marijuana already being distributed through the distribution network in Casper. The fact that the defendant had been actively participating in a marijuana distribution scheme with Lynette at the same time he had allegedly been conspiring with Sara to distribute the LSD undercuts his claim that he had not been an active participant in the LSD distribution conspiracy. At a minimum, we cannot say that the district court's decision to admit this evidence constituted an abuse of discretion.[3]
 
 III. Improper Bolstering
 
 35
 The defendant claims that the government improperly bolstered the testimony of Mikelle Brammer and Lynette Snyder by referencing their plea agreements. The plea agreements provide that Mikelle and Lynette would provide "truthful" testimony in exchange for the government's recommendation of a sentence reduction.[4] The defendant argues that the reference to the "truthfulness" of their testimony constituted improper bolstering. We disagree. In United States v. Lord, 907 F.2d 1028, 1029 (10th Cir.1990), we held that "[i]n light of the dual nature of a plea or cooperation agreement in both impeaching and bolstering the credibility of a witness," a district court can allow the government during direct examination to present evidence of the plea agreement--including the truthfulness provisions contained in the agreement--even though the witness' credibility has not yet been attacked by defense counsel. The defendant requests that we consider overruling Lord. We decline to do so.
 
 IV. Sufficiency of the Evidence
 
 36
 The defendant claims that the evidence introduced by the government at trial was insufficient to support the jury's verdict both as to the conspiracy to distribute LSD in Casper and the use of minors in the conspiracy. In examining a sufficiency of the evidence claim, we review the evidence presented in the light most favorable to the prosecution. If after taking into account all reasonable inferences that could be drawn from the direct and circumstantial evidence presented there is sufficient evidence from which a jury might properly have found the defendant guilty beyond a reasonable doubt, we will affirm its verdict. See United States v. Willis, 890 F.2d 1099, 1103 (10th Cir.1989). After carefully reviewing the record, we conclude that the jury's verdict was supported by sufficient evidence.
 
 
 37
 Specifically, we note that there was ample evidence of the defendant's participation in a conspiracy with his daughter, Sara, and Lynette to distribute LSD in Casper. First, the defendant admits that there was overwhelming evidence proving that he had supplied Lynette with a substantial amount of marijuana to sell in Casper. Both Lynette and her daughter Brooke testified that Lynette had started selling marijuana and then had decided to sell LSD in order to increase her profit margin. Lynette sold the LSD and the marijuana at the same time. The jury could infer from Brooke's testimony that on at least one occasion, her mother had sent LSD purchase money to the defendant. Lynette further testified that she had mailed separate money orders to purchase the LSD and the marijuana. She testified that she had made the LSD money order in the name of Sara Snyder, and the marijuana money order in the name of Mike Rider at the defendant's request. She admitted that on several occasions she had sent both the LSD and the marijuana money orders in the same Federal Express envelope addressed to the defendant, and that on at least one occasion she had checked with the defendant to see whether Sara had been able to purchase the LSD.[5] Lynette further admitted that on one occasion she had received the marijuana and the LSD from Denver in the same box addressed from the defendant.
 
 
 38
 Similarly, Dan Candeleria testified that on one occasion, he, Lynette, and Jason Bowman had driven down to Denver to pick up LSD and marijuana and that the defendant had actively helped Lynette search Sara's bedroom to find the LSD. After they were unable to find the LSD, Dan testified that the defendant had agreed to tell Sara to bring it to Casper. There was clearly sufficient evidence for the jury to find that the defendant had engaged in a conspiracy to distribute LSD in Casper. While Sara may have been primarily responsible for the ultimate supply of LSD, the evidence is nonetheless compelling that the defendant was an active participant.
 
 
 39
 The defendant also argues that there is no evidence linking him with the use of minors in the conspiracy. We disagree. In July 1989, Brooke, who was at that time seventeen, flew down to see the defendant in Denver to pick up marijuana for her mother. Dan Candeleria, who was then seventeen, testified that he had driven to Denver in his car with Lynette and Justin to meet with the defendant to pick up and pay for some LSD and marijuana. In addition to these two instances where the defendant took an active role in situations involving minors, the evidence is sufficient to support an inference that the defendant knew that Lynette would involve minors in the conspiracy up in Casper.[6] Indeed, Lynette's seventeen year-old daughter, Brooke, delivered the last batch of LSD to the government agents that led to everyone's arrest.
 
 V. Sentencing Guidelines
 
 40
 The defendant claims that the district court improperly calculated his sentence by aggregating all the LSD sold by Sara to Lynette for purposes of calculating his base offense level under U.S.S.G. Sec. 2D1.1. Specifically, the defendant claims that there is no evidence that he had anything to do with the quantity considered by the court. So long as the district court determined that the quantity at issue "was within the scope of and reasonably foreseeable in connection with, defendant's agreement with his co-conspirators," the use of the quantity to determine the defendant's offense level was appropriate. See United States v. Reid, 911 F.2d 1456, 1462 (10th Cir.1990), cert. denied, 111 S.Ct. 990 (1991).
 
 
 41
 We apply the clearly erroneous standard of review when reviewing the district court's findings of fact made in the context of a Sec. 2D1.1 guideline determination. United States v. Trujillo, 906 F.2d 1456, 1466 (10th Cir.), cert. denied, 111 S.Ct. 396 (1990). Under the record before us, we cannot conclude that the district court was clearly erroneous.
 
 CONCLUSION
 
 42
 We have reviewed each of the defendant's claims and have found each of them to be without merit. Therefore, the district court is AFFIRMED.
 
 
 
 *
 The Honorable Dale E. Saffels, United States District Judge for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Under 21 U.S.C. Sec. 841(a)(1), it is unlawful "for any person knowingly or intentionally ... to distribute ... a controlled substance." Under 21 U.S.C. Sec. 845b it is unlawful for anyone "at least eighteen years of age to knowingly and intentionally employ, hire, use, persuade, induce, entice, or coerce, a person under eighteen years of age to violate [Sec. 841]." Section 845b has now been recodified as 21 U.S.C. Sec. 161
 
 
 [2]
 Several of the above mentioned participants pleaded guilty to conspiring to distribute marijuana and LSD and to involving minors in the conspiracy; Lynette Snyder received a sentence of 120 months; and Sara Snyder and Mikelle Brammer received twenty-four month sentences
 
 
 [3]
 The defendant raised a related issue of whether his right to testify on his own behalf was "chilled" when the district court denied his motion in limine to keep out evidence of the marijuana transactions. The defendant claims that because the district court refused to grant his motion, he was unable to take the stand in his own defense out of fear that the government would ask him questions about the marijuana transactions thereby forcing him to plead the "Fifth" on the stand
 Because we hold that the district court did not err in allowing the government to introduce evidence pertaining to the defendant's sale of marijuana to Lynette, we cannot hold that the defendant's right to testify on his own behalf was improperly "chilled." While there indeed may have been strategic reasons why the defendant may not have wanted to take the stand, his right to take the stand was not denied.
 
 
 [4]
 In addition to verbally referring to the agreements, the government introduced the written plea agreement into evidence
 
 
 [5]
 The defendant argues that because Lynette testified that she had asked the defendant whether "Sara had 'gotten it,' " that her testimony was ambiguous. We disagree. Lynette never disputes the fact that James knew exactly what she was talking about when she asked him whether Sara had gotten it. Sara was the source of the LSD and the defendant responded to the inquiry by saying he was not sure but that he thought Sara had procured the LSD
 
 
 [6]
 The defendant makes a related claim that the district court erred in submitting to the jury the issue of whether he had conspired to use minors in the conspiracy. However, because this claim is based entirely upon the defendant's claim that the evidence was insufficient, we reject it