**UNITED STATES of America, Appellee,**

v.

**Nicholas J. MASTERPOL,**
**Defendant–Appellant.**

**No. 1417, Docket 90–1688.**

United States Court of Appeals,
Second Circuit.

Argued May 24, 1991.
Decided July 24, 1991.

W. Neill Eggleston, Washington, D.C. (Leiv H. Blad, Jr., Howrey & Simon, of counsel), for defendant-appellant.

Andrew T. Baxter, Asst. U.S. Atty., N.D. N.Y., Syracuse, N.Y. (Frederick J. Scullin, Jr., U.S. Atty., N.D.N.Y., of counsel), for appellee.

Before VAN GRAAFEILAND, MESKILL and McLAUGHLIN, Circuit Judges.

MESKILL, Circuit Judge:

Nicholas J. Masterpol appeals from a judgment entered after a jury trial in the United States District Court for the Northern District of New York, McCurn, J., con-

victing him of obstructing justice in violation of 18 U.S.C. § 1503 and of submitting a false statement within the jurisdiction of a United States court in violation of 18 U.S.C. § 1001. He contends that neither statute covers the conduct for which he was indicted. We agree and reverse both convictions.

## BACKGROUND

In 1988, Nicholas Masterpol was indicted on charges of racketeering, bribery, mail fraud, conspiracy, false statements, perjury and tax fraud. The charges arose in part from Masterpol's attempt to defraud Oliver Schools, Inc. by overcharging it for renovation work that Masterpol's construction company had performed. During the ensuing trial on several of these charges two former employees of Masterpol, Daniel Tagliamonte and Royal Cooper, testified against Masterpol. Both witnesses testified that they had been paid less for their work on the renovation project than Masterpol reported to Oliver Schools. On November 2, 1989, a jury convicted Masterpol on several of the charges in the indictment. Masterpol subsequently pleaded *nolo contendere* to other charges in the indictment. Sentencing was scheduled for January 19, 1990 before Judge Munson.

Shortly before sentencing, Masterpol met individually with Tagliamonte and Cooper. Masterpol urged them to write letters to Judge Munson recanting portions of their trial testimony. At Masterpol's behest, Tagliamonte and Cooper wrote the letters, indicating that they had received either a combination of cash and gifts, or cash alone, from Masterpol equalling the amount that Masterpol claimed to have paid them—in other words, that Masterpol had in fact paid both employees what he had reported to Oliver Schools. According to the government, Masterpol made a copy of the Tagliamonte letter and submitted it to Judge Munson as an attachment to Masterpol's sentencing memorandum. During the sentencing proceedings, Masterpol's attorney presented a copy of the Cooper letter to Judge Munson for consideration in imposing Masterpol's sentence.

Judge Munson sentenced Masterpol to three years imprisonment.

On February 21, 1990, a federal grand jury returned a second indictment against Masterpol. This indictment was directed at Masterpol's conduct in seeking to influence Tagliamonte and Cooper. Count one alleged that Masterpol attempted to obstruct justice in violation of 18 U.S.C. § 1503 when he urged Cooper and Tagliamonte to recant their trial testimony. Count two alleged that Masterpol aided and abetted a violation of 18 U.S.C. § 1001 by knowingly submitting a copy of a false letter written by Cooper within the jurisdiction of a department of the United States, namely, the United States District Court for the Northern District of New York. Masterpol filed pre-trial motions seeking to have both charges dismissed. The district court denied both motions and the case proceeded to trial. After a four day trial, the jury returned a guilty verdict against Masterpol on both counts. The district court sentenced Masterpol to a twenty-one month term of imprisonment. The first twelve months of the term were imposed in connection with his violations of sections 1503 and 1001 and were to run concurrently with Masterpol's sentence for his earlier conviction. The court ordered that the remaining nine months of the sentence be served consecutively, pursuant to 18 U.S.C. § 3147, because Masterpol committed the offenses while released on bail.

On appeal Masterpol renews his contention that sections 1503 and 1001 do not reach the conduct for which he was charged. He also argues that the district court erred in enhancing his sentence under 18 U.S.C. § 3147.

## DISCUSSION

### A. *Obstruction of Justice—18 U.S.C. § 1503*

■ Masterpol was prosecuted under the residual clause of 18 U.S.C. § 1503, which authorizes criminal prosecution of one who "corruptly ... influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice." Masterpol contends that he was im-

properly convicted of violating section 1503. He claims that section 1503, after its amendment in 1982, no longer covers witness tampering. In his view, if he was to be charged under the "Obstruction of Justice" chapter of Title 18, section 1501 through section 1517, he should have been charged under section 1512 or not at all. We agree.

We confronted a similar issue in *United States v. Hernandez*, 730 F.2d 895 (2d Cir. 1984). There the defendant was convicted of violating 18 U.S.C. §§ 1503 and 1512 for threatening a witness in order to obtain documentary evidence. The defendant in *Hernandez* conceded that he was properly convicted of violating section 1512. He argued, however, that the enactment in 1982 of the Victim and Witness Protection Act, Pub.L. No. 97–291, 96 Stat. 1248 (1982), removed from section 1503's purview witness tampering. In support of this argument, he noted that Congress in 1982 deleted all references to witnesses from section 1503, entitled "Influencing or injuring officer or juror generally," and enacted a new provision, section 1512, which was entitled "Tampering with a witness, victim, or an informant" and which was addressed specifically to contacts with witnesses. *Hernandez*, 730 F.2d at 898. The government sought to counter this argument by contending "that although § 1512 absorbs some of the jurisdiction previously given to § 1503, Congress intended, in effect, to create two crimes, making witness intimidation and harassment punishable not only under § 1512, but also under the residual clause of § 1503." *Id.* After examining what Congress did in simultaneously enacting section 1512 and deleting all references to witnesses in section 1503, as well as what Congress said it did in the relevant legislative history, *see id.* at 899, we rejected the government's argument. We noted that congressional intent was "graphically demonstrated by examining those portions of § 1503 that congress expressly deleted" and "conclude[d] that congress affirmatively intended to remove witnesses entirely from the scope of § 1503." *Id.* at 898. *See also United States v. Jackson*, 805 F.2d

457, 461 (2d Cir.1986) (construing *Hernandez* as holding that "18 U.S.C. § 1512, a specific victim and witness protection statute, overrode the more general obstruction of justice statute, [section 1503]"), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987).

The government now seeks to limit *Hernandez*. It notes that *Hernandez* involved a coercive attempt to influence a witness, whereas in this case Masterpol urged witnesses to make false statements without resort to intimidation or harassment. Such noncoercive witness contacts, says the government, are still covered by the residual clause of section 1503 because, otherwise, "noncoercive witness tampering, including corrupt efforts to urge witnesses to make false statements, would not be proscribed by either Section 1512 or Section 1503." This limiting construction of *Hernandez* has been accepted by other circuits and by district courts in this Circuit. *See, e.g., United States v. Lester*, 749 F.2d 1288, 1295 (9th Cir.1984); *United States v. Beatty*, 587 F.Supp. 1325, 1331–33 (E.D.N.Y. 1984). The force of these precedents, however, was diminished significantly in 1988 when Congress amended section 1512.

■ Section 1512(b), as amended, reads in pertinent part:

Whoever knowingly uses intimidation or physical force, threatens, *or corruptly persuades* another person, or attempts to do so ... with intent to—

(1) influence, delay, or prevent the testimony of any person in an official proceeding ... [violates the laws of the United States].

(emphasis added). The "corruptly persuades" language was added to the statute in 1988—well before Masterpol's obstructive conduct in January 1990. Notably, this language reaches noncoercive witness contacts. In fact the conduct described in Masterpol's indictment is nearly identical to that which may be charged under section 1512. The indictment charges that Masterpol *"corruptly* ... attempted to *persuade"* witnesses Cooper and Tagliamonte. The government, moreover, candidly admits in its sur-reply brief that if it "had been aware of the 1988 amendment of Section 1512, the Assistant United States At-torney responsible for the case might have sought to charge Masterpol ... under both 18 U.S.C. § 1503 and § 1512." Thus, what justification there once was for giving *Hernandez* a narrow construction now lacks merit, at least where, as in this instance, there appears to be no statutory vacuum. In any event, to the extent a gap remains in the legislative scheme covering noncoercive witness contacts, "the proper remedy is not for the courts to distort the plain language of [the statute] but for Congress to enact legislation to close the gap." *United States v. King*, 762 F.2d 232, 238 (2d Cir.1985) (rejecting attempt to extend section 1512 to "nonmisleading, nonthreatening, nonintimidating attempt to have a person give false information"), *cert. denied*, 475 U.S. 1018, 106 S.Ct. 1203, 89 L.Ed.2d 316 (1986). Furthermore, the government points to no cases decided after the 1988 amendment to section 1512 that have given *Hernandez* a narrow reading. In view of these developments and the plain import of Congress' actions in both adopting section 1512 and deleting from section 1503 all references to witnesses, we see no reason at this juncture to retreat from the position we took in *Hernandez*, that "congress affirmatively intended to remove witnesses entirely from the scope of § 1503." 730 F.2d at 898.

Masterpol's obstruction of justice conviction under section 1503 therefore must be reversed.

**B.** *Submission of False Statements—18 U.S.C. § 1001*

■ The government prosecuted Masterpol for violating 18 U.S.C. § 1001 on the grounds that he "use[d] a false writing as to material facts within the jurisdiction of a department of the United States, ... the United States District Court for the Northern District of New York." The offense allegedly occurred when Masterpol asked his attorney to submit Cooper's false letter of recommendation to Judge Munson for consideration during sentencing. Masterpol claims that this conduct does not violate 18 U.S.C. § 1001. While acknowledging that section 1001 may reach false statements made to federal courts, he contends that the statute does not cover statements

made by a defendant to a court acting in its judicial capacity. In his view, section 1001 only proscribes false statements made to a court acting in its administrative capacity. We agree.

Section 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Section 6 of Title 18 defines "department" as "one of the executive departments ... unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of the government." The language of section 6 would suggest that section 1001 only targets false statements made within the jurisdiction of executive agencies. However, in 1955, the Supreme Court held that "department," as used in the context of section 1001, encompasses "the executive, legislative and judicial branches of the Government." *United States v. Bramblett*, 348 U.S. 503, 509, 75 S.Ct. 504, 508, 99 L.Ed. 594 (1955) (concerning false statements made by a congressman to Disbursing Office of the House of Representatives).

After *Bramblett*, lower courts had at least two feasible options in construing section 1001 with respect to false statements issued within the jurisdiction of the judicial branch. On one hand, *Bramblett's dictum*, that "department" includes the judicial branch, taken together with the broad language of section 1001, to wit, "any matter within the jurisdiction of any department or agency of the United States," could be said to render section 1001 applicable to *any* misrepresentation within a federal court. On the other hand, the Court's interpretation of section 1001 could be construed to extend no further in the judicial branch than *Bramblett* carried section 1001 in the legislative branch. That is,

because *Bramblett* only applied to a misrepresentation within the legislative branch's administrative province—a Representative's false statement to the Disbursing Office—section 1001's coverage of false statements within the judicial branch arguably should apply only to misrepresentations affecting a federal court's administrative duties. To date no lower court has adopted the broad construction of section 1001 that could be inferred from *Bramblett*. The lower courts instead have adopted the latter, narrower construction.

What came to be called the "adjudicative function exception" to *Bramblett's* apparently all-inclusive interpretation of section 1001 originated in *Morgan v. United States*, 309 F.2d 234 (D.C.Cir.1962), *cert. denied*, 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 416 (1963). In *Morgan* the D.C. Circuit upheld a section 1001 conviction of a defendant who falsely claimed before a district court that he was a member of the local bar. In doing so, the court drew a distinction between the "administrative" or "housekeeping" functions of a court and its "judicial" or "adjudicative" functions. *Morgan* emphasized that the defendant's false statements affected only the district court's administrative functions. Limiting the application of the holding to similar types of prosecutions, Judge Bazelon wrote:

We are certain that neither Congress nor the Supreme Court intended the statute to include traditional trial tactics within the statutory terms "conceals or covers up." We hold only, on the authority of the Supreme Court construction, that the statute does apply to the type of action with which appellant was charged, action which essentially involved the "administrative" or "housekeeping" functions, not the "judicial" machinery of the court.

*Morgan*, 309 F.2d at 237. Several other circuits have adopted this exception and applied it to false statements made during a criminal proceeding. *See United States v. Holmes*, 840 F.2d 246, 248 (4th Cir.) (adopting exception but finding defendant's falsification of standardized consent forms within the administrative function of court), *cert. denied*, 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988); *United States v.*

*Mayer*, 775 F.2d 1387, 1390–92 (9th Cir. 1985) (per curiam) (adopting exception and finding submission of false letters of recommendation to sentencing judge within court's adjudicative function); *United States v. Abrahams*, 604 F.2d 386, 393 (5th Cir.1979) (adopting exception and finding defendant's false statements before a magistrate during a removal proceeding within the court's adjudicative function); *United States v. Erhardt*, 381 F.2d 173, 175 (6th Cir.1967) (per curiam) (adopting exception and finding defendant's submission of false receipt as evidence during criminal proceeding within the court's adjudicative function). *Cf. United States v. Lawson*, 809 F.2d 1514, 1519 (11th Cir.1987) (recognizing the exception but finding it inapplicable to false statements made during a state court civil action involving a local housing authority to which the Secretary of the Department of Housing and Urban Development contributed funds). *But see United States v. Barber*, 881 F.2d 345, 349–50 (7th Cir.1989) (questioning the expansion of the exception but finding it unnecessary to confront it squarely because defendant submitted false letters to sentencing judge on behalf of *another* defendant), *cert. denied*, — U.S. —, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990).

This Circuit has yet to consider directly the adjudicative function exception. In *United States v. D'Amato*, 507 F.2d 26 (2d Cir.1974), however, we faced an analogous question—whether section 1001 covered false statements made in the course of a civil suit. There the defendant was prosecuted under section 1001 for submitting a false affidavit during a private civil action. We observed that section 1001 required "a fraud upon the Government" or "a deception upon an investigative or regulatory agency." *Id.* at 28. Because the government was not a party to the suit and because the false statement was not intended to further a fraudulent scheme against the government, we reversed the conviction. We rejected the argument that "a fraudulent statement in a court is ergo a 'fraud upon the Government.'" *Id.*

*D'Amato* briefly discussed the adjudicative function exception, as applied in *Morgan* and *Erhardt*, but found it unnecessary to adopt the exception to sustain its holding. *Id.* at 28–29. We noted: "Our case is stronger than *Erhardt*, for in a criminal case where the Government is a party, it could at least be argued that the Government is defrauded by the false statement proffered; ours, however, relates to a *civil* case in which the Government is in no way involved." *Id.* at 29. *D'Amato* bears on this case in two ways. First, to the extent section 1001 is available at all to criminalize a false statement made during a judicial proceeding, *D'Amato* indicates that the section only proscribes statements issued during a court proceeding that defraud the government as a party, not the government as a court. Second, it does not specifically endorse or reject the applicability of the judicial function exception in the criminal context; this, the Court left for another day.

*D'Amato*, though a civil case, provides one rationale for reversing Masterpol's section 1001 conviction. The indictment charged Masterpol as follows:

> [T]he defendant did willfully and knowingly cause to be made and did willfully and knowingly use a false writing as to material facts within the jurisdiction of a department of the United States, that is the United States District Court for the Northern District of New York, in that he submitted to the United States District Court for the Northern District of New York at the time of his sentencing ... a copy of a letter signed by Royal Cooper, knowing the same to contain false statements.

The theory of prosecution, then, was that Masterpol defrauded the government as court (the Northern District), not the government as prosecutor. As we have shown, *D'Amato* specifically rejected the argument that the submission of a false affidavit during a judicial proceeding before a federal court thereby becomes a fraud within the jurisdiction of a department of the United States. *D'Amato*, 507 F.2d at 28. The government offers no reason why that holding should not apply with equal force to a federal court hearing a criminal matter; nor can we envision any.

Our reversal of Masterpol's section 1001 conviction does not rest on *D'Amato* alone,

however. We agree with the Courts of Appeals that have adopted the adjudicative function exception.

No court, to our knowledge, whether due to its acceptance of the exception or to prosecutorial reticence, has ever sustained a section 1001 conviction for false statements made by a defendant to a court acting in its judicial capacity. The exception was first articulated nearly thirty years ago and "there has been no response on the part of Congress either repudiating the limitation or refining it. It therefore seems too late in the day to hold that no exception exists." *Mayer,* 775 F.2d at 1390. Moreover, this is not an instance in which a glaring gap in statutory coverage needs to be filled. *Cf. Bramblett,* 348 U.S. at 509, 75 S.Ct. at 508 ("Congress could not have intended to leave frauds such as this without penalty."). As we have indicated, the government apparently could have invoked 18 U.S.C. § 1512 to punish Masterpol's conduct. In fact, a well delineated statutory scheme already covers the general area of false statements made during judicial proceedings. Were we to construe section 1001 broadly, we would invite the pyramiding of prosecutions for false representation, 18 U.S.C. § 1001, perjury, 18 U.S.C. § 1621, subornation of perjury, 18 U.S.C. § 1622, false declarations before a grand jury or court, 18 U.S.C. § 1623, obstruction of justice, 18 U.S.C. § 1501 *et seq.,* and contempt, 18 U.S.C. § 401. A rejection of the adjudicative function exception, in other words, could interfere with, if not swallow up, the pre-existing statutory scheme. Finally, even the Supreme Court's liberal reading of section 1001 in *Bramblett* and *United States v. Rodgers,* 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984), is not offended by an adjudicative function exception. The government's prosecution in *Bramblett* only reached what clearly was an administrative function of the legislative branch, disbursement. *Bramblett* thus only beckons us to apply section 1001 to false statements affecting the administrative function of the judicial branch. *Rodgers,* moreover, merely found section 1001 applicable to false statements made to the FBI and Secret Service, both of which "surely qualify as 'department[s] or agenc[ies] of the United States.'" 466 U.S. at 479, 104 S.Ct. at 1946 (quoting section 1001). Our decision, that section 1001 only reaches false statements made to a federal court acting in its administrative capacity, does not conflict with these holdings.

■ Having determined that section 1001 does not apply to statements made to a court acting in its judicial capacity, we must address one additional question. Does Masterpol's submission of Cooper's false letter of recommendation fall within the exception? Put another way, are a court's sentencing responsibilities adjudicative or administrative in nature? In our view the answer is clear. A sentencing hearing is clearly an adjudicative function. The Ninth Circuit's holding in *Mayer* supports this view. In applying the exception to a defendant who, like Masterpol, had submitted spurious letters of recommendation, *Mayer* stated: "The judge's role in sentencing is not a housekeeping or administrative duty, but is an extension of the defendant's trial itself. Therefore, misrepresentations made during the sentencing hearing would not be covered by section 1001." *Mayer,* 775 F.2d at 1391–92. We agree and hold that Masterpol's submission of a false letter of recommendation falls within the adjudicative function exception.

Since we reverse Masterpol's convictions under section 1001 and section 1503, we need not consider his final argument dealing with his sentencing under 18 U.S.C. § 3147.

### CONCLUSION

Accordingly, the district court's judgment of conviction is reversed.