**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Walter Leroy MOODY, Jr.,
Defendant–Appellant.**

No. 91–8810.

United States Court of Appeals,
Eleventh Circuit.

Oct. 9, 1992.

---

Edward D. Tolley, Cook, Noell, Tolley and Aldridge, Athens, Ga., for defendant-appellant.

Sam A. Wilson, Jr., Asst. U.S. Atty., Macon, Ga., Kathleen A. Felton, U.S. Dept. of Justice, Crim. Div., Appellate Section, Washington, D.C., for plaintiff-appellee.

Before ERVIN *, Chief Judge, HALL*, Circuit Judge, and BUTZNER*, Senior Circuit Judge.

K. K. HALL, Circuit Judge:

Walter Leroy Moody, Jr., appeals the judgment of conviction and the sentence imposed on thirteen counts of obstruction of justice and related offenses. We find no error, and we affirm.

## I.

Moody was convicted in 1972 of possessing a pipe bomb and he served three years in federal prison. Beginning in 1985, he initiated a scheme to have the conviction overturned. In an attempt to demonstrate his innocence, he bribed an acquaintance, Julie Linn–West, to say that she had first-hand knowledge that someone else planted the bomb in Moody's home in 1972. This tangled web soon enveloped Linn–West's mother, Susan Eckstrom, who would later corroborate the fabricated story in court. Moody filed a coram nobis petition in 1986 in the District Court for the Middle District of Georgia. The petition was denied in 1988, and we affirmed the denial in August, 1989.

In early 1990, Moody became aware that his connection to Linn–West and Eckstrom was being investigated, and he contacted Linn–West to insure her and her mother's cooperation. A $400 payment to Linn–West, with a promise of more if she had to testify again, was followed by a threat to Linn–West that her mother's life would be in danger if she (Eckstrom) cooperated with the authorities. Linn–West, however, had already decided to cooperate with the government, and video and audio tapes of many of Moody's meetings and conversations with her were later introduced at trial.

In early 1990, Moody was also under investigation for the 1989 pipe bomb murders of Judge Robert Vance of the Court of Appeals for the Eleventh Circuit and Robert Robinson, a Savannah lawyer. In February 1990, a search pursuant to a warrant was made of Moody's home in connection with the murder investigation. Moody was indicted on July 10, 1990, on charges stemming from the coram nobis matter; indictments on charges related to the murders followed on November 7, 1990. An additional search of his home on July 10 was conducted pursuant to a warrant that was largely based on evidence discovered during the February search. Moody's motion to suppress all items discovered during these searches was denied.

Following a jury trial, Moody was convicted of all thirteen counts. He received a 120–month sentence under the Sentencing Guidelines and a consecutive five-year sentence on a single pre-guidelines count. He appeals his conviction and sentence.

---

* Honorable Sam J. Ervin, III, Chief United States Circuit Judge, Honorable K.K. Hall, United States Circuit Judge, and Honorable John D. Butzner, Jr., Senior United States Circuit Judge, all of the Fourth Circuit, sitting by designation.

## II.

In February 1990, in the context of a civil proceeding initiated by members of the press to obtain access to the February 8 search warrant, all judges of this court entered an order recusing themselves "from participating in this case and in any other cases relating to the investigation of the murder of the Honorable Robert S. Vance in which Walter Leroy Moody is a party." Judge W.D. Owens, Jr., of the Middle District of Georgia recused himself from hearing the instant case on October 4, 1990, and Chief Judge Tjoflat of this court designated Judge Anthony A. Alaimo of the Southern District of Georgia on October 9, 1990. Moody argues that Chief Judge Tjoflat, by virtue of the Eleventh Circuit's recusal order, lacked the authority to designate a judge in the instant case. The crux of this issue is whether the act of designating a trial judge is a ministerial act or an exercise of substantive authority. We review this legal question under a *de novo* standard.

There is no question that a federal judge may perform ministerial acts even after he has disqualified himself from a particular case. *See In re Cement Antitrust Litigation*, 673 F.2d 1020, 1024–25 (9th Cir.1982) (judge who was disqualified by reason of a financial interest could reassign a case). Chief Judge Tjoflat's assignment of Judge Alaimo was a purely ministerial act, without any implication concerning the merits of the case.

## III.

Moody also moved to recuse Judge Alaimo because of the appearance of bias arising from Moody's (then alleged) involvement in the Vance and Robinson murders. Judge Alaimo denied the motion on the ground that the purported basis for his bias was "simply too attenuated to raise even a reasonable appearance of impropriety." We find no abuse of discretion in this decision, and we affirm on the reasoning of the district court. *United States v. Moody*, CR/A No. 90–41–MAC (M.D.Ga. Nov. 19, 1990).

## IV.

Moody raises two issues that were also raised in his motion for a new trial: (1) whether the court erred in failing to conduct a waiver hearing after Moody requested that a general insanity instruction not be given to the jury (the instruction was not given); and (2) whether the court erred in denying the motion to suppress evidence discovered during the searches of his home. In denying the motion for a new trial, the district court discussed each of these issues in depth. We find no error in the court's decision, and we adopt the district court's reasoning. *United States v. Moody*, 763 F.Supp. 589 (M.D.Ga.1991). To the extent that Moody reiterates the same arguments relative to the search warrants that he advanced in his appeal from the murder-related convictions, we expressly adopt herein our opinion in that case. *United States v. Moody*, 977 F.2d 1425 (11th Cir. 1992).

## V.

Moody moved for acquittal on several counts, both at the close of the government's case and at the close of all the evidence. The motions were denied, and he now raises the same issues in his appeal. Although characterized as attacks on the sufficiency of the evidence, the issues are actually ones of statutory construction; as such, we apply a *de novo* standard of review.

## A.

Moody was convicted on four obstruction of justice counts related to his attempt in 1985–86 to carry out his plan to have his 1972 conviction vacated. Specifically, these four counts involved Moody's inducements to Linn–West and her mother to make false declarations and to give perjured testimony concerning the coram nobis matter. He contends that the statute of conviction, 18 U.S.C. § 1503, does not cover witness tampering. The argument is without merit.

Moody's argument is premised on a 1982 amendment to § 1503, which removed a specific reference to "witnesses," and the concomitant addition of a new section, 18 U.S.C. § 1512, which deals specifically with "tampering with a witness, victim or an informant." Victim Witness Protection Act, Pub.L. No. 97–291, §§ 4(a), (c), § 96 Stat. 1248, 1249–1253 (Oct. 12, 1982). We have previously reserved the question of "[w]hether Congress intended to remove proscribed conduct against witnesses from the scope of [§ 1503's] omnibus clause...." *United States v. Brand,* 775 F.2d 1460, 1465 (11th Cir.1985). We now hold that 18 U.S.C. § 1503 is broad enough to cover such proscribed acts against witnesses.

The 1982 amendment of § 1503 left untouched the omnibus clause making it a criminal offense to "... corruptly or by threats or force ... influence[ ], obstruct[ ], or impede[ ], or endeavor[ ] to influence, obstruct, or impede, the due administration of justice...." We now join the majority of circuits in holding that § 1512 is not the exclusive vehicle for prosecution for witness tampering. *United States v. Branch,* 850 F.2d 1080 (5th Cir.1988), *cert. denied,* 488 U.S. 1018, 109 S.Ct. 816, 102 L.Ed.2d 806 (1989); *United States v. Risken,* 788 F.2d 1361 (8th Cir.), *cert. denied,* 479 U.S. 923, 107 S.Ct. 329, 93 L.Ed.2d 302 (1986); *United States v. Rovetuso,* 768 F.2d 809 (7th Cir.1985), *cert. denied,* 474 U.S. 1076, 106 S.Ct. 838, 88 L.Ed.2d 809 (1986); *United States v. Lester,* 749 F.2d 1288 (9th Cir.1984). In so doing, we expressly reject the position taken by the Second Circuit. *United States v. Hernandez,* 730 F.2d 895 (2d Cir.1984) (holding that witness intimidation is exclusively covered by § 1512); *United States v. Masterpol,* 940 F.2d 760 (2nd Cir.1991) (construing 1988 amendment to § 1512 as evidence of Congress's intent that witnesses were removed entirely from § 1503).

### B.

■ In a related attack on his conviction on count 2, Moody argues that the false affidavit, which was appended to the coram nobis filing, could not be a subject of a § 1503 conviction because no "judicial proceeding" was pending at the time the affidavit was signed by Linn–West. Count 2 alleged, however, that the obstruction of justice consisted also of the submission of the affidavit to the court in the coram nobis case. The evidence sufficed to meet the "pending judicial proceeding" element of § 1503.

### C.

■ Moody attacks the statute of conviction for counts 7 and 9, 18 U.S.C. § 201(c)(2), as overbroad and vague. These counts involved a bribe given to Linn–West and one promised to Eckstrom. The argument is that § 201(c)(2) does not expressly require a showing of evil intent on the bribe-giver's part or even that the testimony of the witness be false. We believe, however, that the statute is neither unconstitutionally overbroad or vague.

Section 201(c)(2) makes it a criminal offense to "directly or indirectly [ ] give[ ], offer[ ], or promise[ ] anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing or other proceeding, before any court...." A statute that regulates conduct, as opposed to pure speech, is subject to invalidation on overbreadth grounds only if the "overbreadth [is] ... not only ... real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973). Moody's conduct was clearly within the statute's "legitimate sweep," and he fails to demonstrate that applications that might go beyond constitutional limits are either real or substantial. Moody's overbreadth argument fails.

■ A criminal statute is not unconstitutionally vague if it "define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75

L.Ed.2d 903 (1983). Due process is violated, however, when men of ordinary intelligence must guess at a statute's meaning. *Marshall v. City of Atlanta, Bureau of Services,* 614 F.Supp. 581, 584 (N.D.Ga. 1984), *aff'd,* 770 F.2d 174 (11th Cir.1985). Section 201(c)(2) is sufficiently clear.

Giving something of value "for or because of" a person's testimony obviously proscribes a bribe for false testimony; persons of ordinary intelligence would come to no other conclusion. *See Geaneas v. Willets,* 911 F.2d 579, 583–85 (11th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1431, 113 L.Ed.2d 484 (1991) (rejecting vagueness challenge to similar provision now codified at 18 U.S.C. § 201(c)(1)). We reject Moody's vagueness challenge.

## VI.

 The offense level calculation of the Guidelines portion of Moody's sentence began with U.S.S.G. § 2J1.2 (Obstruction of Justice). Moody contends that the district court erred in applying the specific offense characteristic in § 2J1.2(b)(1) (threatening harm to another) because the pertinent threat was never communicated to Eckstrom, the intended victim.

The conduct underlying the application of § 2J1.2(b)(1) was Moody's statement to Linn–West that he had connections to the Miami Mafia and that if the Mafia were to find out that Eckstrom "had said anything to anybody," both he and Eckstrom would be murdered. The district court concluded that these statements to Linn–West, despite not having been made directly to Eckstrom, constituted threats to cause injury within the meaning of § 2J1.2(b)(1). Moody argues that the communication of the threat must be directly to the potential victim, but the guideline speaks only of "threatening to cause physical injury to a person ... in order to obstruct the administration of justice...." The factual finding underlying the court's decision to apply the 8–level increase, that Moody intended that Linn–West relay the threat to her mother, cannot be seriously disputed. We find no error in the court's application of the specific offense characteristic.

Moody's final attack on his sentence involves a comparison between the conduct for which he received an offense level increase 67% over the base offense level and the specific characteristic increase a defendant would receive for what he terms "more serious forms of conduct." This argument depends heavily on Moody's minimization of the seriousness of his threats. However, a threat on the life of a witness, which was clearly intended to be communicated to the witness, strikes at the heart of our system of justice, and Moody's attempt to disparage the seriousness of this conduct is unavailing.

AFFIRMED.