UNITED STATES of America,
Plaintiff–Appellee,

v.

John Brett ALLEN, also known as Lucky Pierre, also known as John Andrew Davis, also known as John Thomas Davis, also known as David Earl Peterson, Defendant–Appellant.

No. 92–1225.

United States Court of Appeals,
Tenth Circuit.

May 5, 1994.

James R. Allison, Interim U.S. Atty., Daniel J. Cassidy, and John M. Hutchins, Asst. U.S. Attys., Mountain States Drug Task Force, Denver, CO, for plaintiff-appellee.

Leonard E. Davies, Denver, CO, for defendant-appellant.

Before SEYMOUR, Chief Judge, EBEL, Circuit Judge, and THOMPSON,* District Judge.

SEYMOUR, Circuit Judge.

Defendant John Brett Allen was charged in a thirteen count indictment with two violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68

---

* Honorable Ralph G. Thompson, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

(RICO), one count of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848 (CCE), several substantive drug and money laundering offenses, and two counts of obstructing justice. He pleaded guilty to the CCE count and the two substantive counts of obstruction of justice. The remaining counts were dismissed in accordance with the plea agreement. In this appeal, he argues that the obstruction of justice convictions are unconstitutional, and raises several challenges to his sentence.[1] We affirm.

## I.

The charges against Allen arose from his participation in a multistate marijuana importation and distribution scheme. Allen was implicated as the leader of the scheme, which involved several co-defendants, numerous drug offenses, and extensive money laundering activities. The CCE count of the indictment incorporated by reference the factual predicates charged in the RICO and substantive drug offenses. All of those predicates related to Allen's marijuana scheme and money laundering activities. The obstruction of justice charges arose from Allen's attempts to convince a codefendant already under prosecution for earlier involvement in the scheme to jump bond rather than implicate Allen in the scheme, and Allen's attempt to influence the testimony of another witness with respect to Allen's money laundering activities.

At sentencing, the district court determined that Allen was a career offender under the guidelines and increased his criminal history score accordingly. The court also granted downward departures for acceptance of responsibility and substantial assistance to the government. Allen was sentenced to 200 months in prison and five years of supervised release. He now challenges his sentence and also argues for the first time that the obstruction counts were unconstitutionally obtained.

Allen raises twelve arguments on appeal, three of which concern the obstruction of justice counts. The remaining issues challenge the sentence. We will address the constitutional challenges first, then move to the district court's application of the sentencing guidelines. We review the district court's factual findings under the clearly erroneous standard, but review all legal issues de novo. *United States v. Levy,* 992 F.2d 1081, 1083 (10th Cir.1993).

## II.

Allen raises three constitutional challenges to his convictions for obstruction of justice. The first obstruction of justice count was premised on 18 U.S.C. § 1503, which applies when a person "corruptly ... influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice." Allen pleaded guilty to violating this provision by counseling Kurt Grimm, a defendant in a then pending criminal proceeding in Arizona, to jump bond and leave the country. The second obstruction count was premised on 18 U.S.C. § 1512(b)(1), which applies when a person "knowingly ... corruptly persuades another person ... with intent to ... influence ... the testimony of any person in an official proceeding." This count involved Allen's attempts to corrupt and otherwise influence the testimony of a potential witness, Herminia Bernal de Kuehne.

First, Allen asserts that section 1503 is unconstitutional as applied to him because the use of the word "corruptly" in the statute is so vague it failed to give him proper notice that his conduct, as he describes it, is criminal. *Cf. United States v. Poindexter,* 951 F.2d 369, 379 (D.C.Cir.1991) (as used in 18 U.S.C. § 1505, term "corruptly" is unconstitutionally vague), *cert. denied,* —— U.S. ——, 113 S.Ct. 656, 121 L.Ed.2d 583 (1992). Second, he likewise argues that section 1512(b) is unconstitutionally vague, and that his efforts to contact Herminia Bernal de Kuehne do not fall within the statute. Finally, he maintains that he could not legally be prosecuted in Colorado for the section 1503 ob-

---

1. Neither party has requested oral argument, and after examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. This case is therefore submitted on the briefs.

struction because the statute allowing the government to charge and prosecute him in Colorado for that conduct was not passed until after the obstruction took place.

■ Allen raises his vagueness arguments with respect to sections 1503 and 1512 for the first time on appeal. The government contends that he has waived them by failing to present them to the district court in the first instance. " '[A] constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' " *United States v. Olano,* — U.S. —, —, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993) (quoting *Yakus v. United States,* 321 U.S. 414, 444, 64 S.Ct. 660, 677, 88 L.Ed. 834 (1944)). However, "[r]ule 52(b) of the Federal Rules of Criminal Procedure, which governs on appeal from criminal proceedings, provides the Court of Appeals a limited power to correct errors that were forfeited because not timely raised in the District Court." *Id.* Exercise of that limited power is not proper here. "The first limitation on appellate authority under Rule 52(b) is that there indeed be an 'error.' " *Id.* — U.S. at —, 113 S.Ct. at 1777. The government contends that Allen, by his guilty plea, has waived the constitutional errors he seeks to assert. We agree.

The Supreme Court has made clear that "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989). Thus a defendant who makes a counseled and voluntary guilty plea [2] admits both the acts described in the indictment and the legal consequences of those acts. *Id.* at 569–70, 109 S.Ct. at 762–63. Allen argues that his case is excepted from the dispositive effect of a guilty plea because this prosecution is one that on its face the government may not bring. *See id.* at 574–76, 109 S.Ct. at 764–66. In so doing, Allen contends that because the statutes are unconstitutionally vague when applied to his conduct as he characterizes it,

the court had no jurisdiction. However, Allen cannot prove this claim without contradicting the admissions in his guilty plea, namely that he committed the conduct alleged in the indictment *and* that in so doing he committed the crime charged. These admissions indisputably encompass Allen's concession that the charged conduct satisfied the statutory element that he acted corruptly. Accordingly, Allen's claim is foreclosed by his guilty plea and he has therefore waived any error upon which we might exercise our power under Rule 52(b).

■ Finally, Allen maintains that he could not constitutionally be prosecuted in Colorado under section 1503. Prior to 1988, most circuits had concluded that violations under section 1503 could only be prosecuted in the district where the "affected" prosecution was proceeding. *See United States v. Frederick,* 835 F.2d 1211, 1213–14 (7th Cir.1987), *cert. denied,* 486 U.S. 1013, 108 S.Ct. 1747, 100 L.Ed.2d 210 (1988). In 1988, 18 U.S.C. § 1512(h) was amended to provide that section 1503 violations could be prosecuted in either the district of the affected proceeding or in the district where the obstruction actually took place. The conduct at issue here took place just prior to this amendment.

Allen contends his prosecution under section 1503 was improper because the "affected proceeding" was in Arizona where Grimm was being prosecuted. As the district court noted, however, the affected prosecution was the Colorado investigation leading to Allen's indictment in this case. Thus both before and after the enactment of section 1512(h), venue in Colorado was proper. Moreover, Allen waived this argument when he pleaded guilty to the obstruction charge. *United States v. Brown,* 583 F.2d 915, 918 (7th Cir.) (per curiam) (venue protection provided by Article III and the Sixth Amendment may be waived by guilty plea), *cert. denied,* 439 U.S. 875, 99 S.Ct. 211, 58 L.Ed.2d 189 (1978).

■ Allen also asserts that witness tampering by means of non-threatening conduct, as described in Count 12, was not unlawful at the time he committed the acts charged in

---

**2.** Allen does not challenge the adequacy of his                    counsel or assert that his plea was not voluntary.

that count.[3] He relies primarily on the analysis set out in *United States v. Masterpol,* 940 F.2d 760 (2d Cir.1991). Not only is *Masterpol* factually distinguishable, its discussion undermines Allen's argument.

Allen asserts on appeal that the facts underlying Count 12 occurred in October 1988. Br. of Appellant at 4. In sentencing Allen, the district court assumed the conduct underlying Count 12 occurred that October. *See* rec., Sentencing Hearing Transcript (March 27, 1992), at 13. The changes to section 1512 upon which Allen relies became effective on November 18, 1988. In *Masterpol,* to the contrary, the acts at issue occurred well *after* the statute was changed. Review of the analysis in *Masterpol* makes clear that this difference renders that case inapposite and Allen's claim meritless. As *Masterpol* recognizes, after the enactment in 1982 of the Victim and Witness Protection Act, Pub.L. No. 97–291, 96 Stat. 1248 (1982), some courts held that while witness tampering by intimidation or harassment was removed from the scope of section 1503, noncoercive witness contacts were still covered by the residual clause of that section, the provision under which Allen was charged. *See Masterpol,* 940 F.2d at 763; *United States v. Lester,* 749 F.2d 1288, 1291–96 (9th Cir.1984). Section 1512(b) was amended again in November 1988 to reach noncoercive witness contacts. Accordingly, the court in *Masterpol* concluded that noncoercive witness tampering occurring after that date was removed entirely from the scope of section 1503. As *Masterpol* acknowledges, however, prior to that change and during the time at issue in the instant case, section 1503 was construed to reach the noncoercive conduct set out in Count 12. We agree and reject Allen's arguments to the contrary.[4]

### III.

We now turn to Allen's arguments regarding the district court's application of the sentencing guidelines. Allen contends that the court's reliance on the career offender guideline is unlawful under the guidelines' enabling legislation. He also makes several more specific challenges to the sentence imposed, arguing it was calculated improperly. We address each argument in turn.

### A. Failure to File Information

■ At the outset, Allen argues the government could not seek enhancement based on his criminal history because it did not file an information pursuant to 21 U.S.C. § 851. That statute provides, in part,

> [n]o person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a)(1). We have construed this statute to require the filing of an information in "situations in which a defendant's statutory maximum or minimum is enhanced and not [in] situations where the defendant's increased sentence under the Guidelines is within the statutory range." *United States v. Novey,* 922 F.2d 624, 627 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2861, 115 L.Ed.2d 1028 (1991). Allen did not receive a sentence beyond the maximum. Under existing circuit precedent, therefore, the district court did not err in rejecting Allen's argument based on the failure to file an information.

Allen recognizes this precedent but maintains we should revisit the *Novey* decision and overrule it. A panel of this court cannot

---

**3.** In making this argument, Allen appears to assert both that the section 1503 conviction itself was an unconstitutional violation of the ex post facto clause and that the court improperly enhanced his base offense level on the basis of the conduct underlying that conviction. Our discussion is dispositive of both assertions.

**4.** Other courts have rejected any limiting construction of section 1503 even after the 1988 amendment to section 1512. *See, e.g., United States v. Moody,* 977 F.2d 1420, 1424 (11th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1348, 122 L.Ed.2d 1130 (1993). Because Allen's conduct precedes the 1988 amendment and does not involve coercive conduct, we need not decide how far section 1503 still reaches.

overrule circuit precedent. *United States v. Zapata,* 997 F.2d 751, 759 n. 6 (10th Cir. 1993). Moreover, Allen has not persuaded us that the *Novey* case was wrongly decided. It requires that we reject this challenge to the imposition of enhancements based on the government's failure to file an information pursuant to § 851(a)(1).

### B. Applicability of Career Offender Guideline

■ The district court applied the career offender guideline to sentence Allen because the CCE conviction here is his fifth drug-related felony.[5] That guideline states that a defendant is a career offender, and thus subject to an enhanced offense level, if 1) he was at least eighteen years of age at the time of the offense, 2) the offense of conviction is either a crime of violence or a controlled substance offense, and 3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1. Section 4B1.2 broadly defines the term "controlled substance offense" to include "a federal or state law prohibiting the manufacture, import, export, or distribution of a controlled substance ... or the possession of a controlled substance ... with intent to manufacture, import, export or distribute." The commentary to section 4B1.2 instructs that conspiracy and aiding and abetting crimes should be included as controlled drug offenses.

Sections 4B1.1 and 4B1.2 implement the Congressional mandate to the Commission in 28 U.S.C. § 994(h) that certain career drug offenders "as defined in the statute" be sanctioned more harshly than other criminals. U.S.S.G. § 4B1.1, background. Section 994(h) states:

> The [United States Sentencing] Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and—

> (1) *has been convicted of a felony that is*—

>> (A) a crime of violence: or

>> (B) *an offense described in* section 401 of the Controlled Substances Act *(21 U.S.C. 841* ), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act *(21 U.S.C. 952(a), 955 and 959),* and section 1 of the Act of September 15, 1980 *(21 U.S.C. 955a);* and

> (2) *has previously been convicted of two or more prior felonies, each of which is*—

>> (A) a crime of violence; or

>> (B) *an offense described in* section 401 of the Controlled Substances Act *(21 U.S.C. 841* ), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act *(21 U.S.C. 952(a), 955, and 959* ), *and* section 1 of the Act of September 15, 1980 *(21 U.S.C. 955a).*

28 U.S.C. § 994(h) (emphasis added). Allen argues that because the CCE statute, 21 U.S.C. § 848, is not specifically identified in section 994(h)(1)(B) as an offense triggering career offender status, the guideline cannot apply. He also asserts that he does not have a criminal history sufficient to warrant career offender status because his prior conspiracy convictions similarly are not listed in section 994(h)(2)(B) as qualifying controlled substance offenses. At the heart of Allen's argument, and implicit in its rationale, is the assertion that the Sentencing Commission overstepped its bounds in drafting a career offender guideline that goes beyond the limits set forth in the enabling statute.

Although Allen is correct that a CCE conviction under 21 U.S.C. § 848 is not mentioned in 28 U.S.C. § 994(h), we nevertheless conclude that a CCE conviction justifies application of the career offender provisions. A person falls within the scope of section 848 if

> (1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and

---

5. Allen's prior federal record includes convictions for conspiracy to import marijuana (21 U.S.C. §§ 952(a), 963), conspiracy to possess with intent to distribute a controlled substance (21 U.S.C. §§ 846, 841(a)), and aiding and abet- ting the illegal importation of marijuana (21 U.S.C. §§ 960(a)(1), 952(a), 18 U.S.C. § 2). He also has a Texas state conviction for engaging in organized criminal activity.

(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—

    (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

    (B) from which such person obtains substantial income or resources.

21 U.S.C. § 848(c). As prescribed by the statute, the offense underlying a CCE violation must be part of a continuing series of drug offenses undertaken by the defendant *in concert with* five or more other persons. In *Jeffers v. United States,* 432 U.S. 137, 149–50, 97 S.Ct. 2207, 2215–16, 53 L.Ed.2d 168 (1977), the Supreme Court held that

Congress intended the word "concert" to have its common meaning of agreement in a design or plan ... therefore ... § 848 does require proof of an agreement among the persons involved in the continuing criminal enterprise. So construed, § 846 [criminalizing conspiracy to commit any offense defined in Control and Enforcement subsection] is a lesser included offense of § 848, because § 848 requires proof of every fact necessary to show a violation under § 846 as well as proof of several additional elements.

*Id.* (citations omitted). A conspiracy is therefore a necessary part of a CCE violation.

In pertinent part, the sentencing guidelines require that the offense of conviction be "a controlled substance offense" to trigger career offender status. U.S.S.G. § 4B1.1. Note 1 to section 4B1.2 defines a controlled substance offense as including "aiding and abetting, *conspiring,* and attempting to commit [the enumerated] offenses." U.S.S.G. § 4B1.2, note 1 (emphasis added). We therefore hold that Allen's CCE conviction is a qualifying felony under the guidelines because it includes conspiracy as an element.

As Allen points out, conspiracy offenses are not identified as enumerated offenses in 28 U.S.C. § 994(h). Allen argues that the Sentencing Commission could thus not rely on that section as a source of power to draft section 4B1.2 or the commentary accompanying it. He maintains the Commission exceeded the mandate in section 994(h) when it included conspiracy as a qualifying offense in the guidelines. *See United States v. Price,* 990 F.2d 1367, 1369–70 (D.C.Cir.1993) (Commission relied solely on 28 U.S.C. § 994(h) when implementing sections 4B1.1 and 4B1.2, and this statute is inadequate basis for Application Note 1's inclusion of conspiracy); *see also Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993) (commentary is binding *unless* it runs afoul of Constitution or federal statute or is plainly erroneous or inconsistent with the guideline).

Although this argument has facial appeal and support from *Price,* we agree with those circuits which have concluded that section 994(h) does not represent an exclusive list of crimes for which enhancement under the career offender guidelines may be imposed. *See United States v. Baker,* 16 F.3d 854, 857 (8th Cir.1994); *United States v. Heim,* 15 F.3d 830, 832 (9th Cir.1994). Rather, section 994(h) merely declares Congressional intent that the crimes described therein *must* subject the convicted defendant to enhanced penalties. Section 994(h) does not, by mandating enhancement for certain crimes, preclude the Commission from enhancing others if it is within the Commission's grant of discretion to do so.

Congress gave the Sentencing Commission very broad discretion in drafting the guidelines. Section 994(a)(1)(B) directs the Commission to promulgate "guidelines, as described in this section," which define "the appropriate ... term of imprisonment". Section 994(c) in turn requires the Commission "in establishing categories of offenses" to consider among other factors "(3) the nature and degree of harm caused by the offense," "(4) the community view of the gravity of the offense," and "(6) the deterrent effect a particular sentence may have on the commission of the offense by others." In addition, Section 994(i)(1) provides that the guidelines shall specify a "substantial term of imprisonment" for offenders with two or more prior felony convictions. The Supreme Court has found that Congress' delegation of

significant discretion to the Commission is an appropriate exercise of legislative power. *See Mistretta v. United States,* 488 U.S. 361, 377–79, 109 S.Ct. 647, 657–59, 102 L.Ed.2d 714 (1989). Although the current background commentary to section 4B1.1 identifies section 994(h) as the source of the mandate implemented by the guideline, it is clear the Commission could rely on the broader language of section 994(a), which in turn refers to all other parts of section 994, to include conspiracy-related offenses in the career offender guideline.

The legislative history of section 994 supports this interpretation. It provides "that subsections (h) and (i) are not necessarily intended to be an exhaustive list of types of cases in which the guidelines should specify a substantial term of imprisonment, nor of types of cases in which terms at or close to authorized maxima should be specified." S.Rep. No. 225, 98th Cong., 2d Sess. 176 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3359. Moreover, following the *Price* decision the Commission acted quickly to propose amendments to the career offender guideline to reflect more accurately the broader statutory basis for imposing longer sentences on recidivist violent offenders and drug traffickers. 58 Fed.Reg. 67,522, 67,532 (1993) (proposed on December 21, 1993).

In light of these authorities, we conclude that a CCE conviction supports application of the career offender enhancement. This conclusion is also dispositive of Allen's argument that his prior felony convictions for conspiracy and aiding and abetting cannot be used to enhance his conviction because they are not specifically enumerated in section 994(h).

As an alternative to his argument that the guideline cannot apply, Allen argues that the enhancement is improper because four of his five prior convictions were under collateral attack at the time of sentencing and therefore were not final. *See* U.S.S.G. § 4A1.2(a)(1) (defining a prior sentence as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere,* for conduct not part of the instant offense"). He maintains that because the prior convictions are currently subject to constitutional attack, they cannot be used to enhance his sentence.[6]

We reject the suggestion that any time a conviction is under collateral attack, it may not be used for enhancement under the career offender guideline. *See United States v. Guzman–Colores,* 959 F.2d 132, 134–35 (9th Cir.1992) (holding that a prior state conviction subject to collateral attack is final for purposes of enhancement under 21 U.S.C. § 841(b)(1)(B)). Acceptance of this argument would undermine substantially the finality of the judgment and render prior convictions unreliable on an almost open ended basis. It would allow criminal defendants an expedient method of avoiding enhancement. For example, in this case Allen filed collateral attacks on his prior convictions shortly before sentencing, but long after those judgments were otherwise final. As the district court noted, should any of the courts considering the collateral challenges determine that those sentences are unconstitutional, Allen will retain the ability to challenge the enhancement imposed in this case under 28 U.S.C. § 2255. He will not be forced to surrender his due process rights.

Allen relies on *United States v. Rojas,* 724 F.Supp. 1339 (D.Kan.1989), in support of his proposition that his former convictions are not final. In that case, the court held that a prior state conviction was not final for enhancement purposes when, at the time of sentencing, it was on direct appeal. *Id.* at 1340–41. The *Rojas* decision is distinguishable. All of the convictions at issue here have been through the direct appellate process. The attacks on them are now collateral. Consequently, we need not decide whether an ongoing direct criminal appeal would render the convictions inappropriate for en-

---

6. The United States District Court for the Eastern District of Pennsylvania recently denied Allen relief on the 28 U.S.C. § 2255 challenge he brought concerning his 1976 controlled substance conviction. *See United States v. Allen,* No. 91–1936, 1993 WL 524159, at *5 (E.D.Pa. Dec. 14, 1993) (unpublished memorandum and or-

der). The record has not been supplemented to reflect whether an appeal of that order has been filed. It is unclear whether any of the collateral attacks on Allen's other convictions have been resolved. If they have, this challenge is moot. Because the record is unclear, however, we will address this argument.

hancement.[7] *See Williams v. United States,* 651 F.2d 648, 649 (9th Cir.1981); *United States v. Allen,* 566 F.2d 1193, 1195 (3d Cir. 1977), *cert. denied,* 435 U.S. 926, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978). We hold only that the mere filing of a collateral challenge will not automatically render a prior conviction non-final for enhancement purposes under the guidelines. Having determined that the career offender guideline was correctly applied, we now turn to Allen's other challenges to the district court's calculation of his sentence.[8]

### C. Consideration of Improper Information

■ Allen also argues that the presentence report improperly revealed information to the district court which the government had agreed in an unrelated plea bargain would not be used against him. Allen had been charged in a federal Texas prosecution with numerous felony counts including drug and currency violations. He agreed to plead guilty to two counts, and the government agreed to dismiss the remaining counts and allegedly agreed that Allen would suffer no adverse consequences from the dismissed counts. The presentence report in the instant case refers to facts set out in those dismissed Texas counts. Allen contends that the district court's exposure to this information impacted its sentencing decisions and therefore violated the plea bargain.

We disagree. The record reveals that the district court here was aware of the Texas plea bargain and of Allen's argument that the bargain precluded any use of the dismissed counts. The court expressly stated more than once that in sentencing Allen it was considering only the fact that Allen was convicted on two counts and the sentence imposed on those counts. *See, e.g.,* rec., Continued Sentencing Hearing Transcript (July 10, 1992), at 54–55; Supp. Memorandum of Sentencing Hearing & Report of Statement of Reasons (Aug. 14, 1992), at 2. The court's consideration of this information is clearly not barred by the plea bargain as Allen construes it. Given the court's explicit disavowal of any use of information relevant to the dismissed counts, Allen's argument is without merit.

### D. Disproportionality of Sentences

■ Allen maintains the district court erred in calculating his sentence because he received a much greater term of imprisonment than his codefendant Oscar Bernal. He argues this alleged disparity is unfair and directly contradicts the stated purpose of the guidelines, which is to lessen sentencing disparities between similarly situated defendants. *United States v. Sardin,* 921 F.2d 1064, 1067 (10th Cir.1990). We review this challenge under an abuse of discretion standard. *United States v. Trujillo,* 906 F.2d 1456, 1464–65 (10th Cir.), *cert. denied,* 498 U.S. 962, 111 S.Ct. 396, 112 L.Ed.2d 405 (1990).

A disparity in sentences between codefendants does not alone constitute an abuse of discretion. *See Trujillo,* 906 F.2d at 1465. We reject claims of disparate sentences when they are based solely on a lesser sentence imposed on a codefendant, and the defendant's sentence falls within the applicable guideline range. *See United States v. Jackson,* 950 F.2d 633, 638 (10th Cir.1991); *see also Trujillo,* 906 F.2d at 1465. This conclusion is further supported when there are differences in the codefendant's conduct. *See Sardin,* 921 F.2d at 1067–68 (citing cases where sentence was upheld "because the disparity was explicable given the facts in the respective record"); *see also Jackson,* 950 at

---

7. Likewise, we need not decide whether Allen was entitled to attempt to show his prior convictions were unconstitutional at the time of sentencing. There is a split in the circuits that have considered the issue. *Compare United States v. Mitchell,* 18 F.3d 1355, 1358–61 (7th Cir.1994) (agreeing with the First, Fourth, Sixth, Eighth and Eleventh Circuits that defendant may not attack prior state convictions at sentencing unless conviction is presumptively void) *with United States v. Vea–Gonzales,* 999 F.2d 1326, 1330–34 (9th Cir.1993) (holding defendant constitutional-

ly entitled to attempt to show prior convictions unconstitutional before sentencing court uses them to classify as a career criminal). Allen has not raised that issue on appeal.

8. In light of our conclusion that Allen was properly sentenced as a career offender, we need not consider his arguments with respect to the grouping of counts three and twelve and the subsequent enhancement of the offense level.

638; *United States v. Youngpeter*, 986 F.2d 349, 356 (10th Cir.1993).

There are significant differences between Oscar Bernal and Allen for sentencing purposes. The district court found, and the record supports, that Allen was the leader of this drug conspiracy. Furthermore, unlike Bernal, Allen is properly described as a career criminal under the guidelines.

> When two or more defendants are convicted of the same crime a sentencing difference may be expected as the Sentencing Guidelines dictate a sentence based upon each defendant's conduct and criminal history. Sentencing differences due to individual conduct as considered by the Sentencing Guidelines do not make a sentence disproportionate.

*Youngpeter*, 986 F.2d at 356. Here, the record fully supports the disparate sentences based on the different roles these defendants played in the criminal activity and their criminal histories. The district court did not err, therefore, in giving Allen a longer sentence than his codefendant.

### E. Imposition of Concurrent Sentence

■ Allen also challenges the district court's decision to impose these sentences consecutive to those already in place. He contends the district court was operating under the false assumption that it had no discretion to impose concurrent terms of imprisonment. As Allen correctly points out, the decision whether to impose a consecutive or concurrent sentence normally rests within the discretion of the trial court. *United States v. Kalady*, 941 F.2d 1090, 1097 (10th Cir.1991).

The record here shows in unmistakable terms that the district court exercised its discretion. Although questioning whether it had the ability to impose concurrent sentences, the court nevertheless determined it would impose consecutive terms in any event based in part on Allen's complete failure to alter his conduct following multiple past convictions. *See* Rec. Supp. I, Supplementary Memorandum of Sentencing Hearing and Report of Statements of Reasons, at 13. We discern no abuse of discretion.

### F. Supervised Release Term

■ Finally, Allen argues the district court erred in imposing a five year supervised release term. He maintains that because the statutes under which he was convicted do not require or even mention supervised release, the court could not impose this additional requirement. As an alternative, he contends the district court may have believed the term was mandatory, in which case resentencing is appropriate. We reject both arguments.

The legislative authority for imposing a supervised release term is found in 18 U.S.C. § 3583. That statute provides in pertinent part that

> [t]he court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment, except that the court shall include as a part of the sentence requirement that the defendant be placed on a term of supervised release if such a term is required by statute.

*Id.* By its express language, the statute gives sentencing courts discretion to determine whether a supervised release term is appropriate *unless* the statute of conviction requires it, in which case it is mandatory. *See United States v. Maxwell*, 966 F.2d 545, 550–51 (10th Cir.) (noting that where statute of conviction does not mandate supervised release term, district court nevertheless has discretion to impose one), *cert. denied*, — U.S. —, 113 S.Ct. 826, 121 L.Ed.2d 697 (1992).

In addition, it appears Allen misapprehends the nature of the supervised release term. It is not an extension of the original term of imprisonment. *See* H.R.Rep. No. 1030, 98th Cong., 2d Sess. 123, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3306 ("The term of supervised release would be a separate part of the defendant's sentence, rather than being the end of the term of imprisonment."). It is, to the contrary, intended to ease the prisoner's transition back into the community. *See United States v. Van Nymegen*, 910 F.2d 164, 166–67 (5th Cir.1990). Allen's ar-

gument that it unfairly increased his sentence is unpersuasive.

We see nothing in the record to indicate the district court thought the supervised release term was mandatory. In accordance with the plain language of the statute, therefore, we affirm the court's discretionary decision to impose the supervised release term.

The judgment of the United States District Court for the District of Colorado is AFFIRMED.