2 F.3d 1159
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Judy Santiago SMITH, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rosemary SMITH, Defendant-Appellant.
 No.s 92-50115, 92-50170.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 8, 1992.
Decided July 7, 1993.
 
 Before BROWNING, SCHROEDER and FLETCHER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Judy Smith appeals her conviction and sentence for conspiring to tamper with and retaliate against a witness in violation of 18 U.S.C. Sec. 371 (conspiracy), 18 U.S.C. Secs. 1512(b)(1) and (b)(3) (tampering), and 18 U.S.C. Sec. 1513(a)(2) (retaliation). Codefendant, Rosemary Smith, appeals her conviction and sentence for conspiracy, and two separate counts of tampering with a witness and retaliation against a witness. The district court had jurisdiction pursuant to 18 U.S.C. Sec. 3231. Jurisdiction of this court rests on 18 U.S.C. Sec. 1291 and 18 U.S.C. Sec. 3742(a)(1). We affirm.
 
 FACTS
 
 3
 Judy Smith was arrested after Government witness, Tamara May Jones ("Tammy"), told the Government that Judy had paid her to drive a car containing sixty-two pounds of marijuana across the border from Mexico. Soon after being taken into custody Judy telephoned her sister Rosemary and directed her to remove marijuana and any other evidence of marijuana-trafficking from Judy's home before a search could be conducted. Judy and Tammy were charged with importation of marijuana. Judy remained in custody while Tammy was released on bond.
 
 
 4
 Upon her release Tammy came under the watchful eye of Rosemary who cursed, beat and threatened her, insisting that if Tammy testified against Judy she "would not see her next day." Tammy suffered blows to her face and head resulting in a split lip and black eye. A few days later Judy instructed another relative to tell Rosemary to keep Tammy "out of sight" while federal law enforcement authorities sought her in connection with the drug importation charges. Rosemary kept Tammy with her, instilling her with fear through threats. They journeyed to various parts of California and Mexico, and stayed in Mexico the week Tammy was scheduled to testify against Judy. In the absence of Tammy Jones as witness, and on the basis of a plea agreement, the Government dropped charges against Judy. Marshals eventually arrested Tammy on her outstanding warrant for failure to appear.
 
 
 5
 Tammy appeared before a grand jury in April, 1991. She gave accounts of the events following her arrest, part of which she recanted at a second appearance before a grand jury in July. On this second appearance she explained that she had overstated the number of beatings she had suffered at the hands of Rosemary and lied about other details before the first grand jury. The grand jury returned a superseding indictment in which both Judy and Rosemary were charged with conspiring to tamper with and retaliate against a witness using threats, intimidation and physical force in violation of 18 U.S.C. Sec. 371, 18 U.S.C. Secs. 1512(b)(1) and (b)(3), and 18 U.S.C. Sec. 1513(a)(2) (counts one and seven). (Rosemary's ER 1-2). Rosemary was charged with three additional counts of preventing the testimony of a witness, 18 U.S.C. Sec. 1512(b)(1), preventing a witness from communicating information to law enforcement officers, 18 U.S.C. Sec. 1512(b)(3), and retaliating against a witness, 18 U.S.C. Sec. 1513(a)(2) (counts two, four and six).[1]
 
 
 6
 During the six-day trial, beginning July 16, 1991, Judy's counsel took the lead. He strategized with the younger, less experienced counsel appointed to represent Rosemary and divided research tasks between them. In effect, the defendants presented a unified defense. Rosemary's counsel did not make a separate opening statement nor did he cross-examine Tammy, deferring instead to Judy's counsel's statement and cross-examination. He gave a short closing argument during which he inadvertently stated that the Government had carried its burden of proof but went on to argue that Rosemary should not be found guilty.
 
 
 7
 The jury acquitted both defendants on the kidnapping charge, (count seven) but convicted both for conspiracy (count one). Rosemary was found guilty of two of her three additional counts (two and six), but acquitted for one count of tampering with a witness (count four). Following trial, Rosemary obtained new counsel and moved for a new trial on the basis of a claim of incompetence of counsel. The district court allowed Rosemary to present two days of evidence on the alleged inadequacy of her legal assistance. Based on these hearings and further briefing, the district court found that she had been adequately represented and suffered no prejudice on account of the alleged deficiencies in her counsel's performance, preparation, or experience.
 
 
 8
 Initially, the probation officer assigned Judy a total offense level of twenty and placed her in criminal history category IV. These calculations included an 8-level upwards adjustment for physical injury, U.S.S.G. Sec. 2J1.2(b)(1), a 2-level upwards adjustment for physical restraint, U.S.S.G. Sec. 3A1.3, and a 2-level downwards adjustment for minor participation, U.S.S.G. Sec. 3B1.2(b). After considering the objections to the report, he revised Judy's offense level to exclude all upwards adjustments reducing the total offense level to ten. Rosemary's initial offense level was twenty-two with criminal history category I. These assignments took into account an 8-level upwards adjustment for physical injury, U.S.S.G. Sec. 2J1.2(b)(1), and a 2-level upwards adjustment for physical restraint, U.S.S.G. Sec. 3A1.3. The revised report eliminated the physical restraint adjustment producing a total offense level of twenty. The probation officer did not recommend adjusting either defendant's criminal history category.
 
 
 9
 At sentencing, the district court imposed all of the upwards adjustments initially recommended by the probation officer. It also applied the 3-level adjustment for substantial interference with the administration of justice, U.S.S.G. Sec. 2J1.2(b)(2), as recommended by the Government. It eliminated the "minor"-role downwards adjustment to Judy's offense level. Again, on the recommendation of the Government, Judy's criminal history category was increased one step to category V. Judy and Rosemary each received a total offense level of twenty-five. Judy was placed in criminal history category V and Rosemary in category I. The sentencing ranges were 100-125 months and 57-71 months, respectively. The judge imposed the statutory maximum sentence permitted under Judy's conspiracy conviction (60 months); he sentenced Rosemary at the low end of the guideline range (57 months).
 
 DISCUSSION
 
 10
 We address three questions: first, whether the jury instructions properly stated the law of conspiracy with respect to the element of intent; second, whether either defendant's trial counsel's assistance was deficient in a manner which was prejudicial to his client; third, whether the sentencing judge erred or abused his discretion in sentencing.
 
 
 11
 * Defendants contend that the instructions did not include several generic instructions on intent, knowledge and wilfulness suggested by counsel for Judy and Rosemary. They argue that the conspiracy instruction given merely glossed over the element of specific intent central to their defense. The argument has no merit because the district court fully instructed the jury regarding the need to find intent:
 
 
 12
 Three essential elements are required to be proved ...
 
 
 13
 First: that the conspiracy described in the indictment was willfully formed ...
 
 
 14
 Second: that the accused willfully became a member of the conspiracy; ...
 
 
 15
 Third: that one of the conspirators thereafter knowingly committed an overt act ...
 
 
 16
 An "overt act" is any act knowingly committed ... [or] knowingly done which follows and tends toward accomplishment of some object or purpose of the conspiracy charged....
 
 
 17
 In order to establish that a conspiracy existed the evidence in the case must show beyond a reasonable doubt that the members wilfully in some way or manner, positively or tacitly, came to a mutual understanding to try to accomplish a common and unlawful plan....
 
 
 18
 If a person with understanding of the unlawful character of a plan knowingly encourages, advises or assists, for the purpose of furthering the undertaking or scheme, [she] becomes a willful participant--a conspirator.
 
 
 19
 Judy's Excerpt of Record at 11-17 (emphasis added). No ambiguity marks these instructions. They are not in conflict with one another and they adequately state the law. Specific intent means no more than an intent, whether characterized as knowing or as wilful,[2] to "accomplish a specific illegal objective:" here, a conspiracy to obstruct justice. United States v. Melchor-Lopez, 627 F.2d 886, 891 (9th Cir.1980); see also United States v. Medina, 940 F.2d 1247, 1250 (9th Cir.1991) (finding insufficient evidence that a defendant had "knowledge of this conspiracy: to distribute cocaine") (emphasis in original). Taken as a whole, the instructions fully conveyed the requisite mental state required to convict Judy and Rosemary for conspiracy. See United States v. Kessi, 868 F.2d 1097, 1101 (9th Cir.1989) (reviewing court must look to jury instructions as a whole); United States v. Cruz, 783 F.2d 1470, 1472-73 (9th Cir.), cert. denied, 476 U.S. 1174 (1986) (challenge relating to formulation of an instruction may result in reversal only if judge abused discretion).
 
 II
 
 20
 Judy and Rosemary each contend that they suffered ineffective assistance of counsel in violation of their due process and Sixth Amendment rights. Rosemary appeals the district court's finding, after a hearing, that she received adequate representation. Judy did not move for a new trial, or challenge the competency of her counsel in the district court. Therefore, we address only Rosemary's claim.[3]
 
 
 21
 For a defendant to prevail on a claim of ineffective assistance of counsel she must "establish both deficient performance and resulting prejudice." United States v. Olson, 925 F.2d 1170, 1173 (9th Cir.1991). Rosemary argues that she should not be required to meet the prejudice standard if she succeeds in showing conflict of interest inherent in the joint trial. We agree to this extent:
 
 
 22
 "[T]o prevail on an ineffective assistance of counsel claim based on conflict of interest, a defendant must show that 'an actual conflict of interest adversely affected his lawyer's performance.' " United States v. Miskinis, 966 F.2d 1263, 1268 (9th Cir.1992). A defendant need not show prejudice; "prejudice is presumed if the alleged violation is based on an actual conflict of interest." Id.;see also Strickland v. Washington, 466 U.S. 668, 692.
 
 
 23
 Rosemary contends that the "functional" absence of her own lawyer led to Judy's counsel "representing-in-fact both defendants at trial." Rosemary's Opening Brief at 17. She claims her counsel's "abdication was a tactic of default." (Rosemary's Blue Brief 19). Even if viewed as a more considered tactic, she urges that it was unreasonable because "the posture of the evidence in this case demanded radically different trial tactics." Rosemary's Opening Brief at 25. She distinguishes her case from Judy's on the quantum of evidence against each, the varying intensities of "intent," and their differing roles in the conspiracy.
 
 
 24
 Her argument has no merit. Under a conspiracy theory any differences existing between the levels of culpability of the two sisters is irrelevant. Coconspirators can play vastly different roles, harboring only the minimally requisite level of intent, and still be convicted of the same crime.[4] As the district court put it, both Rosemary and Judy required a thoroughgoing defense. Evidence submitted at the new trial hearing indicates that trial counsel for both codefendants collaborated extensively in providing such a defense. Rosemary's trial counsel chose not to embellish on the opening statement and cross examination proficiently performed by Judy's attorney. See United States v. Mooney, 769 F.2d 496, 500 (8th Cir.1985) ("decision to proceed with a unified defense was a matter of trial tactics"). Defendant Rosemary makes no convincing argument that Judy's counsel (her alleged counsel-in-fact) represented conflicting interests. Nor does she show how Judy's counsel's performance was adversely affected by this supposed conflict in a way that affected Rosemary.[5] Without satisfying either of these tests, she cannot prevail on the conflict of interest strand of her claim. See Mannhalt v. Reed, 847 F.2d 576, 579-80 (9th Cir.1988), citing Cuyler v. Sullivan, 446 U.S. 335, 348, 350 (1980)).
 
 
 25
 Nor do we see any basis for concluding that Rosemary's trial counsel was deficient on any of the grounds raised. Lack of felony jury trial experience does not automatically render him ineffective; see United States v. Mouzin, 785 F.2d 682, 697-98 (9th Cir.1986) (discussing United States v. Merritt, 528 F.2d 650, 651 (7th Cir.1976)) ("[a]dmission to the bar allows us to assume that counsel has the training, knowledge, and ability to represent a client"); see also United States v. Cronic, 466 U.S. 648, 652 (1984). The district court found reasonable his decision not to make an opening statement or to independently cross-examine the lead witness as well as other elements of his trial strategy. Nothing in the record indicates that the court erred in this finding. See Gustave v. United States, 627 F.2d 901, 904 (9th Cir.1980) ("[m]ere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation").
 
 
 26
 The district court also found Rosemary's counsel's closing argument to be adequate, resulting in no prejudice to his client despite one puzzling statement by counsel to the effect that the Government had met its burden. The concession was totally inconsistent with the thrust of his argument up to and after that point. Neither the judge nor co-counsel interrupted his presentation to clarify the statement. Rosemary's counsel ended his closing argument urging the jury to "return a not guilty verdict on all charges against Rosemary Smith." (Rosemary's ER 58). In context, we conclude the statement at worst was a "negligent misstep." See United States v. Swanson, 943 F.2d 1070, 1074 (9th Cir.1991). Absent evidence suggesting that the jury convicted on the understanding that Rosemary's "own attorney" believed her guilty, such a misstep does not constitute grounds for reversal. Id. at 1075.
 
 III
 A. Adjustment for Physical Injury
 
 27
 Under the Guidelines, a judge must take into account "specific offense characteristics" when sentencing for obstruction of justice. The convicted individual will have her sentence adjusted if "the offense [of conviction] involved causing or threatening to cause physical injury to a person ... in order to obstruct the administration of justice." U.S.S.G. Sec. 2J1.2(b)(2) (emphasis added). Both Judy and Rosemary were convicted of a conspiracy to obstruct justice. Each may be held responsible for any threats of or actual physical injuries involved in the conspiracy whether or not they executed them. All the Guidelines require is that the threats or acts of injury were "involved" in the crime.
 
 
 28
 The sentencing judge found that Rosemary "beat Tamara Jones about the face and head, causing a swollen lip and a black eye ... in retaliation" for her cooperation in identifying Judy Smith as a drug importer. Rosemary's Excerpt of Record at 153. The judge further found that "it was foreseeable to Judy Smith that Rosemary Smith would threaten and cause physical injury to Tamara Jones in an effort to intimidate" her. Judy's Excerpt of Record at 94. The Government and defendants agree that Rosemary informed Tammy she "would not see her next day." Rosemary's Opening Brief at 9; Government's Brief at 22-23. The judge imputed liability to Judy on the grounds that she could foresee the conspiracy would involve threats or acts of physical injury. Under the Guidelines mere "involvement" suffices. Further, the language of the Guidelines contradicts Judy's argument that she may not be sentenced for imputed liability. See United States v. Moody, 977 F.2d 1420, 1425 (11th Cir.1992) (statements need not be made directly to victim by person held liable to constitute "threats to cause injury within the meaning of Sec. 2J1.2(b)(2)"). Moreover, imputed liability is frequently a consequence of a conspiracy conviction. A coconspirator may be found guilty of a conspiracy involving threats and physical injury (as charged in the Smiths' indictment) whether or not she personally performed any of those acts in furtherance of the conspiracy. We agree that the 8-level increase to Judy's and Rosemary's base offense levels was appropriate.[6]
 
 
 29
 B. Substantial Interference with the Administration of Justice.
 
 
 30
 Additionally, based on a "specific offense characteristic" associated with obstruction of justice, the judge adjusted both defendants' offense levels upwards by three. The Guidelines contemplate this enhancement for an offense resulting in "substantial interference with the administration of justice." U.S.S.G. Sec. 2J1.2(b)(2). Defendants argue that this enhancement "seeks to make 'double-use' of the offense conduct" in distinct contradiction to the application note for a different obstruction-of-justice-related section of the Guidelines. Section 2J1.2(b)(2) authorizes a 3-level adjustment if the conspiracy to obstruct justice resulted in substantial interference with the administration of justice. Section 3C1.1 authorizes a 2-level adjustment if significant further obstruction occurred during the prosecution or investigation of the instant offense. They present different bases for adjustment, with different levels of adjustment, for different reasons. We find no "double-use."
 
 
 31
 The district court found that as a result of the conspiracy, Tammy was unavailable to testify for the Government causing the charges against Judy for importation of drugs to be dismissed. The court found this to be a substantial interference with the administration of justice. The application note for the section makes clear that it encompasses conspiracies which precipitate "premature or improper termination of a felony investigation," or require "unnecessary expenditures of substantial ... resources." U.S.S.G. Sec. 3C1.1, comment (n. 1). Nothing suggests that this adjustment rests on clearly erroneous findings. In light of the circumstances, the judge did not abuse his discretion in applying the full adjustment contemplated by the Guidelines to both coconspirators. See Stinson v. United States, 113 S.Ct. 1913 (1993) (commentary constitutes authoritative guide); Williams v. United States, 112 S.Ct. 1112 (1992) (policy statements constitute authoritative guide).
 
 C. Restraint of Victim
 
 32
 Pursuant to U.S.S.G. Sec. 3A1.3 a sentencing judge must adjust offense levels by two if "a victim was physically restrained in the course of the underlying offense." The district court made the adjustment based on its finding that Rosemary had taken Tammy by the arm and compelled her to follow Rosemary to such events as the Thanksgiving gathering, and that when Tammy expressed the desire to move out of the apartment she shared with another Smith family member, Rosemary had grabbed her by the arm and arranged for their transportation to another California location.
 
 
 33
 Defendants argue that by "applying this adjustment and making the findings of 'restraint' at sentencing the court squarely violated this circuit's prohibition against trial judges circumventing the jury's findings implicit in an acquittal." United States v. Brady, 928 F.2d 844, 850, 851 n. 12 (9th Cir.1991). Rosemary's Opening Brief at 32. This argument also has no merit. To find that Tammy was physically restrained does not "directly contradict[ ]" or "effectively overrule[ ]" the jury's verdict. Id. at 850. The findings do not fall into the "category of facts that cannot be used by a district court in imposing sentence, i.e., facts that have been rejected by a jury's not guilty verdict." Id. at 851 n. 12. The jury acquitted defendants of a federal kidnapping charge. No lesser included charges were considered. Kidnapping in violation of 18 U.S.C. Sec. 1201(a)(1) requires that the government prove the victim was "wilfully transported in interstate or foreign commerce." The judge is not precluded, by the charge or the verdict, from considering evidence of events which occurred intrastate or without the level of intent necessary to convict for kidnapping. Unlike the sentencing judge in Brady, the judge did not find the defendants guilty of the same elements of the crime for which they had been acquitted. Brady, 928 F.2d at 850.
 
 
 34
 Judy and Rosemary contend that the sentencing judge misconstrued the definition of "physical restraint." They argue that the factual findings do not amount to "being tied, bound, or locked up." U.S.S.G. Sec. 1B1.1 comment, (n. 1(i)). We disagree. The language of the definition indicates that physical restraint is not limited to these examples.[7]
 
 CONCLUSION
 
 35
 Finding no reversible error, we affirm the convictions and the sentences imposed on both defendants.
 
 
 36
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Government dismissed all other codefendants and dropped counts three and five. (Judy's Blue Brief 7)
 
 
 [2]
 Accord United States v. Negrete-Gonzales, 966 F.2d 1277, 1282 (9th Cir.1992) (citing United States v. Melchor-Lopez, 627 F.2d 886, 890-91 (9th Cir.1980)). The definitions of "knowingly," "wilfully," and "mens rea" are interchangeable. See Black's Law Dictionary 872, 895, 1599, 1600 (6th ed. 1990)
 
 
 [3]
 We do not here rule on the availability of a 28 U.S.C. Sec. 2255 proceeding to Judy
 
 
 [4]
 Neither counsel argues that trial counsel intended to argue radically different theories of the case. Ordinarily conflicts of this nature are accommodated by severances. See e.g., United States v. Marcello, 731 F.2d 1354, 1359 (9th Cir.1984); United States v. Sears, 663 F.2d 896, 901 (9th Cir.1981), cert. denied, 455 U.S. 1027 (1982)
 
 
 [5]
 It is true that Judy's counsel, in taking the lead on the case, could not pursue his preferred "lie in the weeds" strategy. However, this aggressive posture apparently inured to Rosemary's benefit, as much as to Judy's. Both defendants depended on an excellent cross-examination of Tammy, the Government's lead witness. The district court found that Judy's lawyer "destroyed the credibility" of this witness. Rosemary's Excerpt of Record at 121
 
 
 [6]
 We do not find merit in defendants' argument that eight levels is too great an adjustment for a "slapping" case. The district court simply applied the enhancement provided by the Guidelines. To the extent defendants seek review of the reasonableness of the adjustment, they do not show that the sentencing judge abused his discretion in making the full adjustment contemplated by the Guidelines. See United States v. Weston, 960 F.2d 212, 219 (1st Cir.1992) (underlying findings of fact sufficient, no "double jeopardy" results from 8-level increase pursuant to U.S.S.G. Sec. 2J1.2(b)(2))
 
 
 [7]
 " 'Physically restrained' means the forcible restraint of the victim such as by being tied, bound, or locked-up." U.S.S.G. Sec. 1B1.1, comment (n. 1(i)) (emphasis added). The language of the definition indicates that physical restraint is not limited to these examples; "the terms are merely illustrative examples and do not limit the type of conduct that may constitute a physical restraint." Arcoren v. United States, 929 F.2d 1235, 1246 (8th Cir.1991); accord United States v. Roberts, 898 F.2d 1465, 1470 (10th Cir.1990); United States v. Stokely, 881 F.2d 114, 116 (4th Cir.1989)